IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| APOTEX, INC., *Plaintiff*, v. CEPHALON, INC., *et al.* *Defendants*. | Civil Action No. 2:06-cv-2768-MSG |

**APOTEX, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DECLARE THIS AN EXCEPTIONAL CASE AND FOR ATTORNEYS' FEES AND EXPENSES PURSUANT TO 35 U.S.C. § 285 AND FRCP 54(d)(2)**

Pursuant to Fed. R. Civ. P. 54(d)(2), Apotex respectfully requests this Court to find this case "exceptional" under 35 U.S.C. § 285 so it can award Apotex its attorneys' fees and certain qualifying expenses in relation to the patent claims (*i.e.* Apotex is not seeking its fees for the antitrust claims) in this action.[1] This Court should find this case exceptional and award fees based on its factual and legal findings including that Cephalon committed inequitable conduct. *See* Dkt. 516, Court's Amended Memorandum Opinion, at 51-52 (recognizing that a finding of inequitable conduct carries serious consequences, including that it can lead to an award of attorneys' fees); *Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs. Ltd.*, 394 F.3d 1348, 1351, 1355 (Fed. Cir. 2005). Having met the basic requirements of 54(d)(2)(B), this Court, if it determines that Apotex should receive attorneys' fees, can set a procedure for Apotex to prove the specific amount:

---

[1] Under Fed. R. Civ. P. 54(d)(2)(B)(1), a motion for fees must be filed no later than 14 days after the entry of judgment. Apotex brings this motion now to ensure that there is no timeliness objection.

> Therefore, based upon a review of the ample evidence [there was a finding of inequitable conduct], the Court finds that this case is exceptional within the meaning of *section 285*, and the Court further finds, as a matter within the Court's discretion, that an award of reasonable attorneys' fees is warranted. A determination of the appropriate amount of such award must await submissions providing detailed support for the requested fees.

*Tarkett, Inc. v. Congoleum Corp.*, 156 F.R.D. 608, 615 (E.D. Pa. 2004) (citations omitted) (italics in original).[2]

## I.   LEGAL STANDARDS

Attorneys' fees are awarded pursuant to Fed. R. Civ. P. 54(d)(2), which requires that a party seeking an award timely file a motion that (1) specifies the judgment and the statute, rule or other grounds entitling the movant to the award and (2) state the amount sought or provide a fair estimate of it.

Here, Apotex identifies the Court's 11/07/2011 Amended Memorandum Opinion and related judgment and 35 U.S.C. § 285, which provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."[3] As a threshold matter, Apotex is a prevailing party in the patent claims regardless of the result in the infringement trial because once a claim is held to be invalid, "there is nothing to be infringed." *See, e.g., Richdel, Inc. v. Sunspool Corp.*, 714 F.2d 1573 (Fed. Cir. 1983)

---

[2] Apotex is also entitled to "taxable costs" under F.R.C.P. 54(d)(1) and 28 U.S.C. 1920. These costs are statutorily defined and are generally awarded. *See Smith v. Crown Equipment Corp.*, 2000 WL 62314, at *1 (E.D. Pa. Jan. 13, 2000) ("Under this rule [Fed. R. Civ. P. 54(d)(1)], a prevailing party generally is entitled to an award of costs unless the award would be inequitable"). Apotex is not seeking taxable costs in this motion – the expenses it seeks here are non-taxable costs. Apotex will seek taxable costs at a future time, and will make sure that there is no overlap in with expenses sought under § 285.

[3] Apotex further identifies all statutes, rules and other grounds stated in the rest of this memorandum and in the cases cited herein.

"The purpose of Section 285 is to reimburse a party injured when forced to undergo an 'exceptional' case." *Mathis v. Spears*, 857 F.2d 749, 753 (Fed. Cir. 1988). The determination of whether to award attorneys' fees under § 285 is a two-step inquiry. *See Evident Corp. v. Church & Dwight Co.*, 399 F.3d 1310, 1315 (Fed. Cir. 2005). "The court examines first whether there is clear and convincing evidence that the case is exceptional, and second, whether an award of attorneys fees to the prevailing party is warranted." *Id.*

While there is no *per se* rule, a finding of inequitable conduct alone is sufficient to establish a case as exceptional for the purpose of awarding attorneys' fees under § 285. *Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs. Ltd.*, 394 F.3d 1348, 1351, 1355 (Fed. Cir. 2005). Indeed, once a judgment of inequitable conduct has been made, that "judgment must be considered in ascertaining whether a case is exceptional under 35 U.S.C. § 285." *Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 182 F.3d 1356, 1359 (Fed. Cir. 1999).

Once a court finds a case exceptional, it determines whether attorneys' fees are warranted and can consider factors "such as the closeness of the case, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burdens of litigation as between winner and loser." *S. C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986). "A court's exercise of discretion to award fees is justified when it would be grossly unjust to require the prevailing part to bear its own expenses." *Evident Corp. v. Church & Dwight Co.*, 2003 U.S. Dist. LEXIS 26296, at *6 (D.N.J. June 30, 2003), *aff'd*, 399 F.3d 1310 (Fed. Cir. 2005). Courts have used their discretion to award fees when the patentee withheld material references and deceived the PTO. *See id.*, at *16-17 (citing *S.C. Johnson* and then exercising discretion based on withholding highly material information and a pervasive intent to mislead the PTO); *F.B. Leopold Co. v. Roberts Filter Mfg., Co.*, 1996 U.S. Dist. LEXIS 6630, at *5 (W.D. Pa. Feb. 6, 1996) (finding that it would be "grossly unjust not to award [defendant's]

reasonable attorney fees given the evidence of a "pattern of active, conscious deception . . . with respect to the prosecution of the patent.").

The bottom line is that it is common to award attorneys' fees after finding inequitable conduct. *Brasseler, U.S.A. I, L. P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1375, 1386 (Fed. Cir. 2001) (affirming fee award where inventors and attorneys committed inequitable conduct by not properly investigating or disclosing facts related to on-sale bar); *A.B. Chance Co. v. RTE Corp.*, 854 F.2d 1307, 1312-13 (Fed. Cir. 1989) ("Inequitable conduct ..., either alone or in conjunction with trial conduct, may constitute the basis for an award of attorney fees under 35 U.S.C. § 285") (emphasis added); *Mathis*, 857 F.2d at 753-54; *Evident*, 2003 U.S. Dist. LEXIS 26296, at *6 (awarding attorneys fees where "the applicants not only withheld 'highly material' information from the PTO, but also engaged in deceptive behaviors indicating their pervasive intent to mislead the PTO"); *Merck & Co. v. Danbury Pharmacal, Inc.*, 694 F. Supp. 1, 36-37 (D. Del. 1988) ("Given the flagrant inequitable conduct by Merck before the PTO [where it withheld crucial information and made misleading statements], it would be unjust not to award Danbury reasonable attorney fees.").

## II. ARGUMENT

### A. This is an exceptional case warranting an award of fees and expenses.

This is an exceptional case because Cephalon's scientists and attorneys never told the PTO about the substantial role that another company, Lafon, had in the "invention" it claimed in U.S. Reissue Patent 37,516 ("the '516 patent"). *See* D.I. 516 at 49.

"The number of material references intentionally withheld from the PTO is relevant to finding a case exceptional and awarding fees." *Evident*, 2003 U.S. Dist. LEXIS 26296, at *10 (*citing Tarkett,* 156 F.R.D. at 614-15 (intentional concealment of three material references was "pervasive and egregious" and "extended well beyond any mere isolated lapse in disclosing a

4

potential prior art reference.")).[4] This Court found that Cephalon withheld from the PTO that "(1) Lafon was the manufacturer of Batch 003; (2) Lafon had measured the particle size of that batch prior to providing it to Cephalon; (3) Lafon had manufactured and tested several modafinil API batches and tablet lots that fell within the claim limitations; and (4) that the two companies had both supply and license agreements." D.I. 516 at 48. As in *Evident* and *Tarkett*, Cephalon's "inexplicable concealment" of four pieces of information of "unmistakable importance" (D.I. 516 at 52) demonstrates the exceptional nature of this case.

"Misleading statements made to the PTO as a result of undisclosed material references is [sic] also pertinent to finding a case exceptional." *Evident*, 2003 U.S. Dist. LEXIS 26296 at * 11 (*citing, inter alia, Gardiner v. Gendel*, 727 F. Supp. 799 (E.D.N.Y. 1989) (exceptional case where, *inter alia*, applicants affirmatively misrepresented state of prior art by "withholding the most relevant prior art"). Here, Cephalon withheld the Lafon sales agreement and Lafon modafinil product, the most relevant prior art, from the PTO. Based on this concealment, Cephalon affirmatively misrepresented to the PTO at least twice that "it had modified particle size when in fact it had done nothing whatsoever to change, modify, or improve the modafinil it received from Lafon." D.I. 516 at 23-24, 50-51.[5] As in *Evident* and *Gardiner*, these repeated misrepresentations further demonstrate that this case is exceptional.

---

[4] The court in *Evident* also cited to *McNeil-PPC, Inc. v. L. Perrigo Co.*, 207 F.Supp.2d 356, 360-64 (E. D. Pa. 2002). In *McNeil*, the Federal Circuit reversed an award of fees because there was no explicit finding of inequitable conduct or litigation misconduct. *See McNeil-PPC, Inc. v. L. Perrigo Co.*, 337 F.3d 1362, 1373 (Fed. Cir. 2003). That reversal is not relevant here because this Court has found that Cephalon committed inequitable conduct in prosecuting the '516 patent.

[5] Cephalon also misled the PTO by saying there were no statistically significant changes in heart rate or blood pressure in earlier trials even though they received Lafon's Phase I clinical study showing that there were. D.I. 516 at ¶¶ 43, 46; *see also id.* at ¶¶ 67, 70 (conflicting statements as to whether the changes were expected); *id.* at ¶ 73 (conflicting statements on absorption and potency).

"Courts also have declared cases exceptional and awarded fees where an applicant's inequitable conduct formed the basis for the issuance of the patent." *Evident*, 2003 U.S. Dist. LEXIS 26296 at *11 (*citing Korody-Colyer Corp. v. Gen. Motors Corp.*, 760 F.2d 1293, 1294 (Fed. Cir. 1985) (nondisclosure was "substantial cause" and "crucial factor" in obtaining patent); *Merck*, 694 F. Supp. at 37 (misrepresentations were "very basis" for patent grant)). Here, Cephalon's inequitable conduct clearly led to the issuance of the '516 patent. First, this Court held the withheld information about Lafon's role in the "invention" invalidated the '516 patent under 35 U.S.C. §§ 102(b) and (f). D.I. 516 at 32, 39. As stated in *Therasense, Inc. v. Becton, Dickinson & Co.*, "if a claim is properly invalidated in district court based on the deliberately withheld reference, then that reference is necessarily material ..." under the "but-for" standard. 649 F.3d 1276, 1292 (Fed. Cir. 2011) (en banc). Second, the withheld information (and the misrepresentations that Cephalon itself had modified modafinil to arrive at its invention) related to obviousness, which was repeatedly raised by the patent examiner. D.I. 516 at 49. In light of this, the Court found "[h]ad the PTO been aware of this information, it would not have allowed the patent to issue." *Id.*

"A finding of exceptional case is also warranted where applicants have engaged in a 'program' of withholding their knowledge of material information from the PTO." *Evident*, 2003 U.S. Dist. LEXIS 26296, at *13-14 (*citing Merck*, 694 F. Supp. at 37 (failure to disclose material prior art during multiple submissions to the PTO contributed to conclusion that the patentees were "engaged in a program which had as its goal the withholding from the PTO any knowledge" of the reference); *Fox Indus., Inc. v. Structural Preservation Sys., Inc.*, 922 F.2d 801, 803-04 (Fed. Cir. 1991) (affirming exceptional case finding and fee award where applicant failed to disclose art during prosecution of four applications leading to patent)). Here, as in *Evident* and *Merck*, Cephalon had multiple opportunities to disclose Lafon's role in the

"invention" claimed in the '516 patent. Cephalon was aware of Lafon's role in manufacturing modafinil, the Lafon-Cephalon Supply Agreement, and the large quantity of data and information Lafon provided it before it even filed its original patent application. Second, the examiner repeatedly raised the obviousness issue during prosecution of the original application. *See* D.I. 516 at 49. The withheld information about Lafon was related to obviousness. *Id.* Instead of owning up and disclosing Lafon's role, Cephalon misled the PTO by saying it had modified the particle size of modafinil, when it had done nothing whatsoever to modafinil it received from Lafon. *Id.* at 50. Third, Cephalon actually prosecuted the '516 patent twice as it submitted it for reissue almost two years after the original patent issued. Cephalon once again did not take this opportunity to be candid with the PTO about Lafon or their role in making and selling the modafinil claimed in the '516 patent. Instead, Cephalon again failed to disclose Lafon's role.

The aforementioned factors independently can form the basis for an award of attorneys' fees. That they are all present here is more than sufficient to support an award of attorneys' fees. *See supra*, at pp. 3-4 (collecting cases).

Other considerations also support a finding of exceptional case and an award of attorneys fees. First, the on-sale issue is so analogous to *Enzo*, which granted summary judgment of invalidity, that it is difficult to ascertain how it could be reasonably distinguished. *See* D.I. 27 at 27-30. Second, in most cases, an accused infringer can be on the market selling product during a lawsuit, and theoretically use those proceeds to pay litigation costs. In this case, Cephalon's inequitable conduct in procuring the '516 patent allowed Cephalon to create a bottleneck that has wholly prevented Apotex from entering the market, and allowed Cephalon to garner monopolistic profits. These exceptional circumstances further support an award of fees.

**B.      A fair estimate of the total award is $5,400,000.**

This patent litigation involved an enormous undertaking over the past five years. Apotex incurred approximately $5.4 million dollars in fees and expenses for the patent claims.[6] Apotex paid approximately $4.5 million in attorney fees in litigating the patent claims to a successful conclusion (the remaining $900,000 was expenses, explained below). This amount was actually paid by Apotex, and should be fully recompensed. *Mathis*, 857 F.2d at 755 ("Where, as here, a prevailing party 'has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation ...." (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)).[7]

The $4.5 million estimate is fair for the pharmaceutical litigation here where Cephalon literally had hundreds of millions of dollars of sales at risk. Indeed, in a published 2011 survey, the average cost for a patent litigation with greater than $25 million at risk in Philadelphia was $5.8 million dollars.[8] Ex. A (AIPLA 2011 Survey); s*ee Comark Commuc'ns, Inc. v. Harris Corp.*, 1998 U.S. Dist. LEXIS 4036, at *17 (E.D. Pa. Mar. 30, 1998) (awarding $3,025,859 in total expenses while comparing to the 1997 AIPLA survey which was near $3 million). In this case, Apotex did its best to be as economical as possible while developing the case in the best way for the client, including using contract attorneys, relying on previously taken depositions, and not pursuing substantial additional discovery unless necessary. Apotex's legal fees are reasonable, and should be expected to be substantially more than Cephalon's because Cephalon

---

[6] This estimate is based on an initial review of the bills with an attempt to separate the patent-related fees and qualifying disbursements from antitrust-related fees and qualifying disbursements. The ultimate number could be somewhat higher or lower.

[7] This number does not include the substantial time devoted to the case by Apotex's scientists, attorneys, staff, and business people.

[8] This number includes expenses other than attorneys' fees. The surveyed number for Chicago, where Apotex's counsel are located, is $6.2 million. *See* Ex. A.

(including many of the same outside counsel) had already litigated the '516 patent through summary judgment briefing in the earlier generic litigation against Teva, Barr, Mylan and Ranbaxy.[9]

Substantial fees were expended to review the discovery produced by Cephalon in order to uncover the documents and testimony that established both Cephalon's intent to deceive the PTO and the materiality of the material withheld from the PTO. This included preparing for, taking, reviewing, and/or analyzing: (1) over 1.8 million pages of produced documents; (2) approximately fifty (50) days of deposition testimony from the previous patent litigation between Cephalon and the generic defendants; and (3) twenty five (25) days of fact and expert deposition testimony related to the patent claims in this case.

Substantial fees were related to motion practice, much of which was unsuccessful motions brought by Cephalon. There was motion practice initiated by Cephalon to dismiss some or all of Apotex's '516 patent counts (along with the '346 patent claims and antitrust claims) on multiple occasions, which were all denied. *See* D.I. 31, 157.[10] There was motion practice during discovery initiated by Cephalon. *See* D.I. 215, 230 (Cephalon's motion and reply to compel samples); D.I. 258, 272 (Cephalon's motion and reply to compel GMP documents) (both largely denied). There were summary judgment motions related to the '346 patent, where Cephalon again raised standing. Also, the parties filed seven *Daubert* motions that were fully

---

[9] Apotex expects that if Cephalon is going to assert Apotex's fee amount as unfair in an opposition brief, it will submit to the Court the amount of fees it expended in litigation on the '516 patent against Apotex for a real world comparison.

[10] Cephalon maintained these motions for over a year despite the Supreme Court and Federal Circuit allowing jurisdiction in nearly identical situations that Apotex was in. *See* D.I. 43, 49, 54, 80, 82, 86 (briefing in January 2007 and April 2008 re: *MedImmune v. Genentech* and *Caraco*'s effect on jurisdiction over Apotex's '516 patent counts, respectively); D.I. 127 (Cephalon finally withdrawing its motion to dismiss on the '516 patent counts in June 2009). The Court denied Cephalon's motion to dismiss the remaining claims in February 2010. D.I. 204, 205.

briefed.  *See* D.I. 395-399, 409-413, 465, 466, 473, 474.  Cephalon also filed three motions *in limine* related to the '516 patent, which required responsive briefing from Apotex.  *See* D.I. 420-421, 437, 468, 478.  Cephalon was not successful in any of its pre-trial motions.  *See* D.I. 434, 439, 440, 476.

Trials necessitate a lot of work, and for the patent claims there were two.  The bench trial on invalidity and unenforceability lasted eight days (March 29 – April 4 and April 4-7, 2011) and the bench trial on non-infringement took five additional days (July 12-14 and 19-20, 2011).  Before each trial, the parties submitted pre-trial memoranda.  D.I. 403, 405, 471, 472.  Multiple fact and expert witnesses were examined at each trial.  Other testimony from important fact witnesses, such as those of Lafon employees and Cephalon's patent prosecutor, were designated from their depositions.  After each trial the parties submitted briefing on the issues presented at the trial.  D.I. 457, 459, 491, 494.  All of these contributed to the fair fee award sought by Apotex.

### 1.     All fees relating to the '516 patent claims should be awarded.

A prevailing defendant should be fully compensated for all fees and expenses incurred.  *See Hensley*, 461 U.S. at 435 ("Where a [party] has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation ...."); *Mathis*, 857 F.2d at 755 (Section 285 allows for the prevailing party to "be made whole with an award of all fees and expenses.").  An award of fees includes fees for all defenses pursued, regardless of whether the defense was successful, rejected, or not addressed by the court.  *See Brasseler,* 267 F.3d at 1386 (citing *Mathis*, 857 F.2d at 755).  In this case, that means that Apotex is entitled to all fees on the '516 patent, including fees related to

Apotex's claims of anticipation by public use and lack of enablement for the '516 patent, even though Apotex withdrew them in its post-trial memorandum. D.I. 457. [11]

### 2. All fees relating to the '346 patent claims should be awarded.

Apotex should also recover attorneys fees for the litigation related to the '346 patent. "The major purpose of [ 35 U.S.C. § 285] is to compensate a prevailing party for monies which he had to spend which he would not have had to spend but for the losing party's misconduct." *Mueller Brass Co. v. Reading Indus., Inc.*, 352 F. Supp. 1357, 1381 (E. D. Pa. 1972), *aff'd*, 487 F.2d 1395 (3d Cir. 1973). In this case, Apotex only brought a declaratory judgment action against the '346 patent because a bottleneck was formed by the '516 patent.[12] If there was no '516 patent (which there should not have been because it was procured only through inequitable conduct), Apotex would not have had to litigate against the '346 patent because Cephalon agrees it is not infringed. In addition, Apotex did its best to minimize fees relating to the '346 patent. First, Apotex reached an agreement with Cephalon to forgo discovery regarding the '346 patent unless Apotex's motion for summary judgment of non-infringement was denied. Second, Apotex withdrew its count for invalidity of the '346 patent upon grant of Apotex's motion for summary judgment of non-infringement, which was a complete victory for Apotex. *Hensley*, 461 U.S. at 436 ("the most critical factor is the degree of success obtained"). Therefore, the fees Apotex did incur were reasonable and should be recompensed.

---

[11] Apotex is not currently seeking fees for the time spent on the unadjudicated antitrust claims, and reserves the right to do so in the future.

[12] Apotex incorporates by reference its briefing establishing why it had jurisdiction to challenge the '346 patent to eliminate the bottleneck. *See* D.I. 205 (denying Cephalon's motion to dismiss, *inter alia*, Apotex's '346 patent declaratory judgment counts).

### 3. All reasonable, non-taxable expenses and disbursements for the patent case should be awarded.

Apotex also seeks an award of its nontaxable costs, estimated to total approximately $900,000. The Federal Circuit has held that non-taxable costs are recoverable under 35 U.S.C. § 285. *See, e.g.*, *Cent. Soya v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983); *Law, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1069 (Fed. Cir. 1983) ("Section 285 also permits the prevailing party to recover disbursements that were ncessary for the case"); *Maxwell v. Angel-Etts of California, Inc.*, Nos. 01-1601, 01-1647, 02-1198 & 02-1219, 2002 U.S. App. LEXIS 26528 at **3 (Fed. Cir. Dec. 13, 2002) ("We reverse and remand on the issue of non-taxable costs because our decision in [*Central Soya*] makes clear that such costs are recoverable").

Courts allow reasonable litigation expenses that include (1) photocopying charges; (2) hotel and travel expenses: (3) computer assisted legal research charges; (4) deposition costs; (5) copies of patents and patent prosecution histories; (6) courier fees; (7) trial supply expenses; (8) postage and facsimile charges; and (9) supplemental secretarial costs. *See, e.g., Synthon IP, Inc. v. Pfizer Inc.*, 484 F. Supp. 2d 437, 445 (E.D. Va. 2007) ; *Comark*, 1998 U.S. Dist. LEXIS 4036, at *15-16 (awarding over $400,000 in non taxable costs for Travel, Discovery Related Matters, Litigation Support, and Communications).

### 4. Apotex will also seek post-judgment interest.

Apotex should be awarded post-judgment interest pursuant to 28 U.S.C. § 1961(a):

> Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment.

The phrase "any money judgment" includes a judgment awarding attorneys fees. *Mathis*, 857 F.2d at 760. Interest on an attorneys fees award "runs from the date of the judgment establishing

12

the right to the award, not the date of the judgment establishing its quantum." *Id.* Apotex will provide an accounting for this interest in future briefing.

### III. CONCLUSION

For the foregoing reasons, Apotex respectfully requests that this Court find this case to be exceptional and award Apotex reasonable attorneys fees and expenses, with interest, under 35 U.S.C. § 285, 28 U.S.C. § 1961(a), and Fed. R. Civ. P. 52(d)(2).

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: November 11, 2011 | /s/ Brian J. Sodikoff<br>Robert B. Breisblatt<br>Brian J. Sodikoff<br>Martin S. Masar III<br>KATTEN MUCHIN ROSENMAN LLP<br>525 West Monroe Street<br>Chicago, Illinois 60661-3693<br>Phone: (312) 902-5200<br><br>Howard Langer<br>LANGER GROGRAN & DIVER, P.C.<br>1717 Arch Street, Suite 4130<br>Philadelphia, PA 19103<br>Phone: (215) 320-5661<br><br>*Attorneys for Apotex, Inc.* |

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| APOTEX, INC., ) | |
| ) | |
| Plaintiff ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 2:06-cv-2768-MSG |
| CEPHALON, INC., et al. ) | |
| ) | |
| Defendants ) | |
| ) | |

**CERTIFICATE OF SERVICE**

I certify that on November 11, 2011, a copy of APOTEX, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DECLARE THIS AN EXCEPTIONAL CASE AND FOR ATTORNEYS' FEES AND EXPENSES PURSUANT TO 35 U.S.C. § 285 AND FRCP 54(d)(2) was served via the Court's ECF system.

Dated: November 11, 2011

/s/ Brian J. Sodikoff
Robert B. Breisblatt
Brian J. Sodikoff
Martin S. Masar III
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661-3693
Phone: (312) 902-5200

Howard Langer
LANGER GROGRAN & DIVER, P.C.
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Phone: (215) 320-5661

*Attorneys for Apotex, Inc.*