**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| APOTEX, INC., | |
| *Plaintiff*, | |
| v. | |
| CEPHALON, INC., *et al.* | Civil Action No. 2:06-cv-2768-MSG |
| *Defendants*. | |

**APOTEX'S MEMORANDUM ON THE
PRECLUSIVE EFFECT OF THE PATENT DECISIONS
ON THE PARTIES TO CIVIL ACTION NO. 2:06-CV-2768**[1]

## I.      Summary

Apotex's entitlement to preclusive effect is unique from the other plaintiffs because it

was a party to the patent action, and therefore the doctrine that applies is "law of the case."  Law

of the case is a straightforward doctrine that provides that issues decided by the Court in an

action are determinative in later phases of the same action, until and unless they are overturned

on appeal.  When bifurcated patent and antitrust claims are in the same action, the findings made

during the patent phase are law of the case for the antitrust phase.  *See In re Innotron*

*Diagnostics*, 800 F. 2d 1077, 1085 (Fed. Cir. 1986) (stating, "in the trial of the patent issues the

validity of the patent and Innotron's affirmative defenses will become law of the case and thus

removed from trial on the original antitrust issues.").  Here, the Court issued a comprehensive

memorandum opinion finding that the '516 patent was procured by fraud and is invalid after a

---

[1] This brief focuses on the preclusive effect of the Court's October 31, 2011 opinion.  The
Court's *Markman* decision, its decision on the '346 patent, and pending decision on
infringement, when issued, also have preclusive effect.

vigorously litigated bench trial. Those findings are law of the case for Apotex's bifurcated antitrust claims against all defendants in civil action 2:06-cv-2768.

Recognizing the impact of the Court's patent findings, the Defendants now posit conflicting arguments to try to delay resolution of Apotex's antitrust claims. On the one hand, they ask to delay the antitrust claims pending appeal of the patent claims, implicitly asserting that a reversal of this Court's patent determinations *would* have preclusive effect on the antitrust claims.[2] On the other hand, they also argue for the first time that the Court's substantial investment in the patent trials was for naught as to Apotex's antitrust claims because the Court's patent determinations *would not* have preclusive effect.[3]

From the status conference, it seems that defendants' primary argument against application of law of the case is an unspecified right to trial by jury. But of course, the law does not allow sophisticated parties to fully participate in a bench trial, and then argue that the bench trial has no impact. That is because participation in a bench trial without objection finally resolves any issues there determined and any jury trial right is waived:

> This Court has stated that once a party makes a timely demand for a jury trial, that party subsequently waives that right when it participates in a bench trial without objection. Numerous courts have adopted this position.

*Wilcher v. City of Wilmington*, 139 F.3d 366, 378-79 (3d Cir. 1998) (citation to 2nd, 3rd, and 9th Circuit cases and MOORE'S omitted).

---

[2] Apotex believes its antitrust claims should move forward because of the strength of the invalidity and fraud findings, and because it has been seeking redress for over five years.

[3] Defendants also ask to wait for the Third Circuit's ruling in *In re K-Dur Antitrust Litigation*, No. 10-4571 (3rd Cir.), while at the same time arguing that *K-Dur* is not controlling because Federal Circuit law applies. Apotex's consistent position is that the Court need not wait for *K-Dur* because the Court found fraud on the PTO, and therefore *Walker Process* controls (i.e., a fraudulently procured patent has no scope). *See infra* (describing *Walker Process*).

Here, the defendants knew that Apotex's factual allegations regarding the '516 patent (including fraudulent procurement from the patent office) were the basis for patent and antitrust claims. *See, e.g., Cephalon's Opposition to Motion to Bifurcate*, at 2 ("the antitrust and related patent misuse and tort claims are based on the same factual allegations as the challenges to the '516 patent") (**Dkt. No. 183**). Knowing this, they consented to the Court deciding these factual issues at a bench trial for inequitable conduct, as opposed to having a jury decide them in the antitrust portion of the case. *See, e.g.*, October 18, 2010 Email from Cephalon's counsel to Apotex's counsel (**Ex. B**) ("We believe that the inequitable conduct claim should continue to be a part of the March patent trial and that it should not be moved to the antitrust portion of the case."); *10/22/2009 Transcript*, at 53:4-9 (**Ex. C**) (Generic defendants "very comfortable" with patent case moving forward). Defendants made their decision to have the Court determine the factual issues underlying fraud on the PTO and validity; they cannot revoke it now that they do not like the results.

The Court's finding of fraud is sufficient under controlling Supreme Court precedent to establish much of the antitrust liability. *See Walker Process Equip., Inc. v. Food Machinery and Chem. Corp.*, 382 U.S. 172, 177 (1965). Apotex is prepared to move forward with a trial to establish any remaining elements and to obtain relief it has been seeking for over five years.

## II.    Background

Apotex's complaint names Cephalon and the Generic Defendants, and so they are all parties to Apotex's Civil Action No. 2:06-cv-2768-MSG. *See Apotex's Second Amended Complaint* (**Dkt. No. 195**). This Complaint includes a number of factual allegations establishing that the '516 patent was procured by fraud and invalid. *See id.* at ¶¶ 15-38 (containing detailed allegations under title, "Cephalon Procured the RE '516 Patent Through Fraud, and Knew or Should Have Known that It Is Unenforceable and Invalid"). The Complaint then sets forth

patent claims (invalidity and inequitable conduct) and antitrust claims (*Walker Process* and sham litigation) that are based on those same predicate facts.

Apotex's action proceeded with a number of civil suits brought by non-competitor private parties, class actions, and the FTC. Cephalon and the Generic Defendants filed a motion to dismiss Apotex's antitrust claims. In response, Apotex filed an opposition brief that detailed how the same factual predicate that established its patent claims of inequitable conduct and validity also established its antitrust claims under *Walker Process*. *See Apotex Opp.*, at 1-18 (detailing how its factual contentions on Cephalon fraudulent procurement of the '516 patent qualify as inequitable conduct and under *Walker Process* and *Nobelpharma* to establish antitrust claims) (**Dkt. No. 161**).

The Court held oral argument on the motions to dismiss. At oral argument, Apotex again detailed how the same facts that establish its inequitable conduct patent claims also establish *Walker Process* and sham litigation antitrust liability. *10/22/2009 Transcript*, at 59:16-66:25 (detailing how Apotex's allegations of fraud in procuring patent meet both inequitable conduct and *Walker Process* requirements) (**Ex. C**).

At that same hearing, the Court asked the Generic Defendants if they took issue with moving Apotex's patent claims forward more quickly in advance of the antitrust claims. The Generic Defendants did not disagree with moving the patent claims forward first – they were "comfortable" with it:

> Yes, Your Honor, we certainly would be very comfortable having the patent case proceed as expeditiously if the Court is able to hear it . . . . But we're very comfortable there.

*10/22/2009 Transcript*, at 53:4-9 (**Ex. C**) (consenting so long as they were not burdened with discovery – which they were not).

Because Apotex needed a final court decision on the patent claims to eliminate the bottleneck, and because its patent claims did not involve all issues found in the antitrust claims, especially when considering all of the other plaintiffs, Apotex moved to sever or bifurcate its action.  *See Motion to Bifurcate*, at 2-3 (**Dkt. No. 175-1**).[4]

In opposition, Cephalon recognized (and put all parties on further notice) that certain operative facts underlie both Apotex's patent and antitrust actions.  *See*, *e.g.*, *Cephalon's Opposition to Motion to Bifurcate*, at 2 ("the antitrust and related patent misuse and tort claims are based on the same factual allegations as the challenges to the '516 patent"); *id.* at 6 ("In particular, Apotex rests its antitrust claims on precisely the same factual allegations underlying its patent claims . . . [detailing the same factual allegations].") (**Dkt. No. 183**).  Cephalon did *not* argue that bifurcation would somehow violate its right to trial by jury.  The Generic Defendants did not object to Apotex's motion for bifurcation.  *Generic Defendants' Response*, at 1 (**Dkt. 180**).  The Generic Defendants did not claim a right to participate in the patent trial, or that having a separate patent trial before the antitrust trial, would violate any right to trial by jury.

On January 20, 2010, the Court *bifurcated* Apotex's patent claims from its other claims under Fed. R. Civ. P. 42 ("Rule 42").  *See Court Order Bifurcating Apotex's Patent Claims* (**Dkt. No. 196**).  That means that Apotex's patent and antitrust claims were always part of the same action, so law of the case applies.  None of the parties to this action – neither Cephalon nor any Generic Defendant – filed a motion to reconsider or raised any right to a trial by jury.

The Court entered a scheduling order setting the patent claims for trial *before* the antitrust claims would go to trial, notice of which was served on all of the defendants through the Court's

---

[4] Notably, Apotex has never asserted that the antitrust claims and patent claims were entirely distinct.  Rather, Apotex noted to the Court that other courts have found overlap but still decided to sever or bifurcate.  *See id.* at 7-8.

ECF system.  *See Court's Scheduling Order* (**Dkt. No. 203**).  So by early 2010, all the

defendants knew that the same factual predicate, i.e., Cephalon's procurement of the '516

patent/validity, was the basis of Apotex's patent and antitrust claims, and knew that this factual

predicate was going to be determined *first* in the patent phase.   Neither Cephalon nor any

Generic Defendant objected or raised any right to a trial by jury.  Specifically, no defendant

argued that having the factual issues underlying both Apotex's patent claims and antitrust claims

(i.e., the facts showing fraud on the PTO and invalidity) resolved by the Court in the bifurcated

patent action first, before the antitrust claims, would violate their jury trial rights.

During discovery, the parties engaged in discussions on many topics.  Not once did any

defendant assert that having the Court determine the factual predicate surrounding the '516

patent that underlies both Apotex's patent and antitrust claims *first* in the patent phase at a bench

trial would violate its right to trial by jury.[5]  In October 2010, Cephalon specifically stated that it

wanted to try the inequitable conduct with the other patent claims in a bench trial, expressly

consenting to having them tried before the bench instead of before a jury in the antitrust phase:

> Apotex:   we wanted to talk with you regarding potentially grouping the inequitable conduct issue with the antitrust action so we would have a bench trial in March on just invalidity and infringement.
>
> Cephalon:   We have now had an opportunity to consider your proposal and to discuss it with our client.  We believe that the inequitable conduct claim should continue to be a part of the March patent trial and that it should *not* be moved to the antitrust portion of the case.

October 18, 2010 Email from Cephalon's counsel to Apotex's counsel (**Ex. B**) (emphases

added).

---

[5] Indeed, none of the Generic Defendants ever raised a desire to participate in the patent trials at all at any point, much less a right to trial by jury on any of the issues underlying Apotex's *Walker Process* claims there presented.

Apotex and Cephalon filed pre-trial memorandum that specifically identified whether Cephalon procured the '516 patent by fraud and whether the '516 patent was invalid as issues to be determined by the Court in the patent phase of the case. No defendant raised any right to trial by jury. The Court held multiple pretrial conferences regarding the bench trials to be held. No defendant raised any right to trial by jury.

With the parties' consent and knowledge, the Court held two bench trials on the patent issues. No defendant raised any right to trial by jury on any of the issues presented. No defendant claimed that having the Court determine at a bench trial whether Cephalon's procurement of the '516 was fraudulent and whether the '516 patent was invalid first in the patent phase would violate a trial by jury right, even knowing the same facts were alleged in support of antitrust claims.

The Court requested post-trial briefing. Apotex and Cephalon submitted briefs that were unquestionably directed at the underlying predicates of whether the '516 patent was procured by fraud and/or invalid. No defendant raised any right to trial by jury or that the Court could not itself determine those issues first, before any jury trial was held in the antitrust phase of Apotex's case. Finally, the Court issued an extensive opinion on validity and unenforceability finding against the '516 patent. After the Court issued those findings, counsel for the defendants for the first time argued that their clients' right to trial by jury would be violated if those findings are law of the case.

III. **Applicable Legal Doctrines**

A. **The Law of Case Doctrine.**

Because Apotex's patent claims are part of the same action as Apotex's bifurcated antitrust claims, the doctrine establishing preclusive effect of the patent decision is law of the case. Issues resolved by the Court in the first, patent phase of a case that is bifurcated become

the law of the case for the second, antitrust phase of that same case.  *See In Re Innotron Diagnostics*, 800 F. 2d at 1085 ("in the trial of the patent issues the validity of the patent and Innotron's affirmative defenses will become law of the case and thus removed from trial on the original antitrust issues.");[6] *see also  Baldwin Hardware v. Franksu Enterprises Corp*, 18 USPQ 2d 1252, 1254 (C.D. Ca. 1990) (citing *Innotron* and holding that bifurcation of patent claims serves economy "because determination of the validity of the patent will become the law of the case in a subsequent antitrust trial, if such trial is necessary."); *Kimberly Clark Worldwide, Inc. v. First Quality Baby Products LLC*, 2011 WL 1627052, at *2 (M.D. Pa. April 29, 2011) ("resolution of the patent disputes would become the law of the case, and thus eliminate or reduce some of the proof that would be necessary at trial on the [antitrust] counterclaims.") (citing *Official Comm. of Unsecured Creditors v Shapiro*, 190 F.R.D. 352, 354 (E.D. Pa. 2000)).

> These decisions comport with general application of law of the case:

> As most commonly defined, the [law of the case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.

*In re Pharmacy Benefit Managers Antitrust Litigation*, 582 F.3d 432, 439 (3rd Cir. 2009) (citing *Arizona v. California*, 460 U.S. 605, 618 (1983)).  Application of law of the case is determined according to Third Circuit, not Federal Circuit, principles because it is not specific to patent law; however, the law of the case doctrine has been applied the same way in both the Federal and Third Circuits.  *See Suel v. Secretary of Health and Human Services*, 192 F.3d 981, 985 (Fed. Cir 1999) ("Under law of the case, then, a court will generally refuse to reopen or reconsider what has already been decided at an earlier stage of the litigation.") (citing *Kori Corp. v. Wilco Marsh*

---

[6] *In re Innotron* was also the lead case Apotex cited in support of bifurcation.  *See Motion for Bifurcation* (**Dkt. No. 175-1**).

*Buggies & Draglines, Inc.*, 761 F.2d 649, 657 (Fed. Cir.1985) and *In re Resyn Corp.*, 945 F.2d 1279, 1281 (3d Cir. 1991)).

The "[l]aw of the case rules have developed 'to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.'" *Casey v. Planned Parenthood of Se. Pa.*, 14 F.3d 848, 856 (3d Cir. 1994) (quoting 18 Charles A. Wright, Arthur R. Miller, Edward Cooper, Federal Practice and Procedure, § 4478 at 788 (2d ed. 1981); *see also Hamilton v. Leavy*, 322 F.3d 776 (3d Cir. 2003) ("We apply the [law of the case] doctrine with the intent that it will promote finality, consistency, and judicial economy.") (citations omitted).[7]  The law of the case doctrine "ensures judicial efficiency and prevents endless litigation.  Its elementary logic is matched by elementary fairness – a litigant given one good bite at the apple should not have a second."  *See Suel*, 192 F.3d at 984-85.

**B.      Waiver of the Right to Trial by Jury Applies when Bench Trials Are Held Without Objection.**

When certain issues serve as the basis for both legal and equitable claims, those issues can be the subject of a jury trial demand.  Where a jury trial demand is made and maintained, the need to preserve the right to a trial by jury results in having a jury determine those issues.  *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 550-51 (1990).  This can be accomplished by either trying the legal claims first to a jury, or if the equitable claims are tried first, empanelling a jury to determine the overlapping issues.  *See id.*

The right to a trial by jury can be waived.  A right to have a jury decide an issue is waived once a Court conducts a bench trial to decide that issue without any objection:

---

[7] There are limited exceptions to the application of the law of the case.  The Court may reconsider "previously decided issues in extraordinary circumstances such as where: (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice."  *In re City of Philadelphia Litigation*, 158 F.3d 711, 718 (3d Cir. 1998).  None of these exceptions apply here.

> This Court has stated that once a party makes a timely demand for a jury trial, that party subsequently waives that right when it participates in a bench trial without objection. Numerous courts have adopted this position.

*Wilcher v. City of Wilmington*, 139 F.3d 366, 378-79 (3d Cir. 1998) (citation to 2nd, 3rd, and 9th

Circuit cases and Moore's omitted). This waiver is well-recognized in the law:

> **[4]  Waiver by Conduct**
>
> **[a]  Participation in Bench Trial**
>
> Knowing participation in a bench trial without objection constitutes a waiver of the right to jury trial despite a previous timely jury demand. Particularly when a party's participation in a bench trial is vigorous, and there is no mention of a jury, it has been held that the omission cannot be presumed the result of mere inadvertence, but can only be ascribed to knowledgeable relinquishment of the prior jury demand.

MOORE'S FEDERAL PRACTICE 3D § 38.52[4][a], at 38-259 to 38-260 (citations to supporting cases

in 1st through 10th Circuits omitted) (**Ex. A**). Therefore, when a party consents to having an

issue that is the basis for legal and equitable claims determined by the bench, the bench's

findings are binding and do not violate any jury trial right.

## IV.   <u>Discussion</u>

> A.    **The Law of the Case Means that the Court's Findings that the '516 Patent Is Invalid and Procured by Fraud Are Binding Against Cephalon in the Antitrust Phase of Apotex's Case.**

Cephalon specifically chose to litigate the inequitable conduct issues in the March bench

trial before the antitrust jury trial. Cephalon had a full and fair opportunity to litigate those

issues, and vigorously defended against Apotex's claim. The Court's findings are law of the

case, and any right to trial by jury has been waived.

That there is law of the case cannot be reasonably disputed. Cephalon was a party

defendant who fully litigated the patent issues at two trials. Cephalon took discovery, cross-

examined witnesses, presented expert testimony, and fully participated in two bench trials. The

issues of invalidity and fraud before the PTO were always a central focus on the patent claims. The Court resolved those issues, and they are now binding as law of the case. *See Smith Intern.v. Hughes Tool Co.*, 759 F.2d 1572, 1578-79 (Fed. Cir. 1985) (applying law of the case to hold that allegations of misconduct before the patent office were controlled by earlier decision on fraud on the patent office because "the facts underlying the claims of unenforceability are the same as those upon which its claim of fraud rests.");[8] *In re Innotron Diagnostics*, 800 F. 2d at 1085 ("in the trial of the patent issues the validity of the patent and Innotron's affirmative defenses will become law of the case and thus removed from trial on the original antitrust issues."); *see also Baldwin Hardware*, 18 USPQ 2d at 1254 (citing *Innotron* and holding that bifurcation of patent claims serves economy "because determination of the validity of the patent will become the law of the case in a subsequent antitrust trial, if such trial is necessary.").

As mentioned, there are three policies that support application of law of the case, "finality, consistency, and judicial economy," and they all apply here. *Hamilton*, 322 F.3d 776. Finality – this case has been pending for over five years. Cephalon had its fair chance, this Court has invested resources to decide these issues, and so the only recourse left to defendants is an appeal. Consistency – in the interest of comity, it would be improper to allow another fact-finder to decide the same issues. Judicial Economy – this Court has invested substantial time in these matters, and it would be a huge waste to litigate them again before a jury.

Given the overwhelming policies and "elementary logic" supporting application of law of the case, it is easy to understand why this Circuit has repeatedly rejected defendants' contention that they are not bound by the Court's determinations. This Circuit has repeatedly held that participation in a bench trial without objection waives any right to have a jury

---

[8] While *Smith International* applied law of the case against the accused infringer, the same reasoning applies here to apply it against the defendants.

determine an issue decided by the bench.  MOORE'S FEDERAL PRACTICE 3D § 38.52[4][a], at 38-

259 to 38-260; *In re City of Philadelphia Litigation*, 158 F.3d 723, 727 (3d Cir. 1998) (citing

*Cooper v. Loper*, 923 F.2d 1045, 1049 (3d Cir. 1991)); *Wilcher*, 139 F.3d at 378-79 (reaffirming

adoption of *Cooper* rule).  Otherwise, parties would routinely take a first shot at a bench trial,

and then seek a whole new jury trial whenever they obtained an unfavorable result – which is

exactly what the defendants are trying to do here.

Other circuits have found the same waiver, and have applied it in patent cases.  MOORE'S

FEDERAL PRACTICE 3D § 38.52[4][a], at 38-259 to 38-260 (**Ex. A**).  For example, in *Transmatic*,

the patentee asserted a right to a trial by jury in its brief in opposition to bifurcation.  *Transmatic,*

*Inc. v. Gulton Indus.*, 835 F. Supp. 1026, 1027-1028 (E.D. Mi. 1993). Later, the patentee did not

object when the trial court established an advisory jury on all liability and damages issues before

trial.  *Id.*  The district court found waiver of the jury trial right because when the Court decided

to employ the jury as merely advisory, the patentee did not object.  *Id.*  The Federal Circuit,

applying Sixth Circuit law, affirmed that waiver.  *Transmatic*, 53 F.3d at 1278.  Here, Cephalon

did not even raise a right to trial by jury in its opposition to bifurcation, and it chose to fully

participate in a bench trial (without a jury) without any objection.  Cephalon's jury trial waiver is

clear.[9]

Ultimately, Cephalon is a sophisticated party that at all times has been represented by

capable counsel.  Cephalon knew that Apotex's inequitable conduct claims relied on the same

predicate as its *Walker Process* fraud claims.  *See Cephalon Opposition to Bifurcation*, at 2, 6

(admitting that Apotex's allegations of fraud on the PTO were the basis for its patent and

---

[9] Cephalon mentioned *Lytle* and *Shum* at the recent status conference.  Neither of those cases
consider the waiver by participation in a bench trial, which has been applied in the Third Circuit
both before and after *Lytle*.  *See, e.g., Wilcher*, 139 F.3d at 379 (confirming the *Cooper* rule and
finding waiver by participation in a bench trial in 1998).

antitrust claims) (**Dkt. No. 183**); *Apotex's Opposition to Motion to Dismiss*, at pp. 1-18 (showing

that Apotex's allegations relating to Cephalon's procurement of the '516 patent were basis for

patent and antitrust claims) (**Dkt. No. 161**); *10/22/2009 Motion to Dismiss Hearing Transcript*,

at 59:16-66:25 (all discussed *supra* in Background section).   Cephalon specifically consented to

having the Court determine those issues at a bench trial in the patent action – and this was after

thorough consideration and consultation with its attorneys.   *See* October 8, 2010 Email from

Cephalon's counsel to Apotex's counsel (**Ex. B**) (expressing a preference of having the Court

determine the issues underlying Apotex's inequitable conduct claims, as opposed to having them

determined later by a jury in the antitrust phase after consultation with client).   By electing to

have the Court determine these issues in relation to Apotex's equitable patent claims in a bench

trial, Cephalon waived any right it had to a jury deciding these issues.   Cephalon is bound by its

decision to have the Court determine these issues, and they are now law of the case in the

antitrust phase of Apotex's case.

### B.      Application of Law of the Case Resolves a Substantial Portion of Apotex's Antitrust Claim.[10]

The Court found that Cephalon committed fraud on the PTO by knowingly and willfully

misrepresenting facts and withholding information from the PTO.   Under Supreme Court

precedent, that finding is sufficient to strip Cephalon of any patent-based immunity:

> Walker's counterclaim alleged that Food Machinery obtained the patent by
> knowingly and willfully misrepresenting facts to the Patent Office.   Proof of this
> assertion would be sufficient to strip Food Machinery of its exemption from the
> antitrust laws.

*Walker Process* 382 U.S. at 177; *Nobelpharma, AB, v. Implant Innovations, Inc.*, 141 F.3d 1059,

1068-1071 (Fed. Cir. 1998) (confirming that committing fraud on PTO through willful omissions

---

[10] All of the Court's findings are law of the case in the antitrust action.   This section provides an
example of the impact of those findings.

meets *Walker Process* requirements).  There is no real question that Cephalon used the '516

patent to keep Apotex out of the market.  Apotex's antitrust trial against Cephalon will focus on

the damages Cephalon caused Apotex by enforcing the fraudulent '516 patent.

> **C.     The Court's Findings that the '516 Patent Is Invalid and Procured by Fraud
> Are Also Binding on the Generic Defendants.**

The Court's finding that the '516 patent is invalid and procured by fraud is final as to all

parties to this case, including the Generic Defendants because they have also waived any right to

independently try the patent issue.

The Generic Defendants are all parties to Apotex's action.  They were named as

Defendants in June 2006, at the same time as Cephalon.  *See Original Complaint* (**Dkt. No. 1**).

When Apotex moved to bifurcate its patent claims and move forward with them quickly, the

Generic Defendants agreed with that approach:

> Yes, Your Honor, we certainly would be very comfortable having the patent case
> proceed as expeditiously if the Court is able to hear it . . . . But we're very
> comfortable there.

*10/22/2009 Transcript*, at 53:4-9 (**Ex. C**); *see also Statement of Generic Defendants on Apotex's*

*Bifurcation Motion*  ("The Generic Defendants take no position on this motion, except to

respectfully request that the Court implement case-management procedures so that the Generic

Defendants and other non-parties to the patent case are not burdened with duplicative

discovery.") (**Dkt. No. 180**).  In addition, at no point did any of the Generic Defendants object to

the patent trial, move to intervene in the patent trial, or claim a violation of a right to a trial by

jury by having the patent trial be litigated first before the Court.

By specifically consenting to the issues of Cephalon's procurement of the '516 patent and

patent validity being resolved first and expeditiously by the Court, the Generic Defendants are

now bound by the Court's rulings on those issues.  The Generic Defendants have no right to have

a jury re-determine those issues because any jury right has been waived for the same reasons

Cephalon waived that right.   *See supra* (analyzing MOORE'S FEDERAL PRACTICE 3D and case law

to establish Cephalon's waiver); *see  also Casperone v. Landmark Oil & Gas Corp.*, 819 F.2d

112, 116 (5th Cir. 1987) (finding waiver when co-defendant waived right to jury at pretrial

conference not attended by other co-defendant).

Indeed, the Generic Defendants' argument that the Court's patent rulings do not apply to

them ultimately rests on the incredible proposition that a licensee to a patent has the right to

assert that a previously invalidated patent is actually valid.  Quite simply, Apotex is not aware of

any authority so holding, and besides the clear waiver there are several additional reasons not to

create such law.

Adopting the Generic Defendants' position would squarely conflict with Supreme Court

precedent.  The Supreme Court held that when a patent is found invalid in an adjudication where

the patentee had a full and fair opportunity to litigate, the patent is invalid or unenforceable

conclusively from then on.  *Blonder-Tongue Labs., Inc.  v. Univ. of Ill. Foundation, et al.*, 402

U.S. 313 (1971).  The Federal Circuit has applied that basic principle to findings of inequitable

conduct. *Pharmacia & Upjohn Co. v. Mylan Pharm. Inc.*, 170 F.3d 1373, 1379 (Fed. Cir. 1999)

("the principle of *Blonder-Tongue* . . . respecting collateral estoppel also applies to

unenforceability").  Those cases would be effectively abrogated if mere licensees could

somehow resurrect invalidated patents because then the conclusive holding of invalidity would in

effect be neutralized.[11]  The '516 patent was held invalid and unenforceable after a full and fair

---

[11] Patents are property rights, and so previous determinations on the scope or validity of that
right are binding on all parties with an interest in the patent. *See Taylor v. Sturgell*, 128 S. Ct.
2161, 2172 (2008) (discussing the "second" recognized exception to nonparty preclusion as
cases involving substantive legal relationships, including in relation to property).  A licensee
(Generic Defendants) being precluded by an earlier suit involving the patentee (Cephalon) is
analogous to how a lessee is precluded from claiming a right to property lost by the lessor in a

litigation against the patentee.  The licensee Generic Defendants have no right to contest or change those findings.

The Generic Defendants' argument also contradicts Supreme Court precedent addressing the issue of who is bound by a finding of patent invalidity in a patent litigation.  In *Independent Wireless*, the Supreme Court stated that the owner of a patent would be bound by a decree issued in a case where his exclusive licensee brings a patent action *even if* he declines to take any part in the case.  *Independent Wireless Telegraph, Co. v. Radio Corp. of Am.*, 269 U.S. 459, 472-74 (1926).  The Supreme Court reasoned:

> This Court in sustaining the result held that parties bound by the judgment in such a case included all who were directly interested in the subject matter who had knowledge of the pendency of the suit and a right to take part therein, even if they refused or neglected to appear and avail themselves of this right.

Here, the impetus to bind the Generic Defendants is even stronger than addressed in *Independent Wireless*.  The Generic Defendants were not just on notice – they were actually part of the suit – and they chose not to participate in the patent trials (except through their joint defense with Cephalon).  Further, if a patentee is bound by a decision under *Independent Wireless*, then mere licensees like the Generic Defendants should be as well.  The Generic Defendants are bound by the patent findings as law of the case.

Holding the Generic Defendants to the patent trial rulings is also eminently fair.  First, the Court's findings of invalidity and inequitable conduct are exactly what the Generic Defendants pleaded in the earlier 2003 patent litigations before they executed the collusive settlement agreements.  The Generic Defendants pleaded that the '516 patent was invalid and unenforceable after taking the same discovery relied upon by Apotex.  Further, not only did they

---

previous suit.  *See, e.g., Kruger & Birch, Inc. v. DuBoyce*, 241 F.2d 849, 854 (3d Cir. 1957).  Of course, here the Generic Defendants are parties and are thus bound.

plead invalidity, they moved for summary judgment of invalidity, including for the on-sale bar and derivation found by this Court.  It is now fair to now hold the Generic Defendants to exactly what they alleged in the 2003 litigations.

Second, the Generic Defendants' interests were adequately represented by joint defendant, co-conspirator Cephalon.  *See Taylor*, 128 S. Ct. at 2172 (describing recognized principle that even non-parties can be bound when their interests were adequately represented by a party).  Here, the Generic Defendants were parties, and they were adequately represented because: (1) they chose to not participate directly; (2) Cephalon had every reason to defend the '516 patent, and did so fully; (3) the Generic Defendants entered into a joint defense agreement with Cephalon to defend against Apotex's claims;[12] and (4) the Generic Defendants, instead of developing their own expert reports on the issues of validity and unenforceability (which would conflict with those served in the earlier litigations), joined with Cephalon and adopted Cephalon's.  *See June 10, 2011 Emails* (adopting Cephalon's expert reports in antitrust phase [which in themselves adopted the expert reports submitted in the patent phase of Apotex's case]) (**Ex. E**).  The Generic Defendants' positions, presented through Cephalon, have been decided by the Court.  This additional reason supports applying preclusive effect.

## V.    Conclusion

Cephalon has been fully heard on Apotex's patent claims in two trials.  There is no good reason to justify re-litigating the same patent issues in relation to the antitrust claims.  This is a

---

[12] The Joint Defense Agreement entered into between Cephalon and the Generic Defendants was (1) specific to the patent case and (2) used as a basis to not produce documents, through stipulation.  *See, e.g.*, *9-1-2010 Letter from Cephalon*, at #4 (reflecting that communications "between Cephalon's outside counsel and outside counsel for the Generic Defendants about this litigation (including the patent claims in the Apotex case)" would not be discoverable or logged) (**Ex. D**).

clear instance where law of the case applies to all parties in this civil action, and so all of the

Court's findings have preclusive effect.


                                                    Respectfully submitted,

Dated: January 20, 2012                              /s/ Brian J. Sodikoff
                                                    Robert B. Breisblatt
                                                    Alexander S. Vesselinovitch
                                                    Brian J. Sodikoff
                                                    Thomas J. Maas
                                                    KATTEN MUCHIN ROSENMAN LLP
                                                    525 West Monroe Street
                                                    Chicago, Illinois 60661-3693
                                                    Phone: (312) 902-5200

                                                    Howard Langer
                                                    LANGER GROGAN & DIVER, P.C.
                                                    1717 Arch Street, Suite 4130
                                                    Philadelphia, PA 19103
                                                    Phone: (215) 320-5661

                                                    *Attorneys for Apotex, Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| APOTEX, INC., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | CIVIL ACTION No. 2:06-cv-2768-MSG |
| v. | ) | |
| | ) | |
| CEPHALON, INC., *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

**CERTIFICATE OF SERVICE**

I certify that on January 20, 2012, a copy of APOTEX'S MEMORANDUM ON THE PRECLUSIVE EFFECT OF THE PATENT DECISIONS ON THE PARTIES TO CIVIL ACTION NO. 2:06-CV-2768 was served on counsel of record via the Court's ECF system.

Dated: January 20, 2012

/s/ Thomas J. Maas
Robert B. Breisblatt
Alexander S. Vesselinovitch
Brian J. Sodikoff
Thomas J. Maas
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661-3693
Phone: (312) 902-5200

Howard Langer
LANGER GROGAN & DIVER, P.C.
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Phone: (215) 320-5661

*Attorneys for Apotex, Inc.*