# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

APOTEX, INC.,

*Plaintiff,*

v.

CEPHALON, INC., *et al.*

*Defendants.*

Civil Action No. 2:06-cv-2768-MSG

CONFIDENTIAL – Filed under seal

**REPLY OF PLAINTIFF APOTEX, INC. IN SUPPORT OF ITS MOTION TO PRECLUDE EVIDENCE OR TO COMPEL DISCLOSURE OF CEPHALON DOCUMENTS**

In its opposition to Apotex's Motion to Preclude Evidence or to Compel Disclosure of Cephalon Documents, Defendant Cephalon mischaracterizes the issues. The question is whether it is fair for Cephalon to disclose selectively evidence about ▮▮▮▮, to introduce experts' opinions based on that selective disclosure of evidence, and then to withhold documents on the grounds of privilege that might be used to impeach those experts on the same topic. Allowing Cephalon's experts to testify on that subject free from cross-examination with impeaching documents would mislead and confuse the jury, and it should not be allowed. Moreover, Cephalon waived its privilege when two of its lawyers disclosed their legal conclusions to outside competitors, and it will do so again in the wide scope of direct examination of its experts.

Lacking any legitimate reason why it should be allowed to present misleading, one-sided expert testimony to the jury while withholding potentially key impeaching evidence, Cephalon attempts to distract and mislead the Court. Cephalon opens its response with a false assertion. Namely, Cephalon declares that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Cephalon Opp. Br. at 1, emphasis supplied). Apotex's experts agreed with no such thing. Apotex's expert Thomas Hoxie repeatedly concluded that ▮▮▮▮▮▮▮▮▮▮ (*See, e.g.*, Ex. N,[1] Hoxie Rep., ¶10; Ex. O, Hoxie Rebuttal Report ¶¶ 2-3). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Cephalon Opp. Br. at 5). To the contrary, ▮▮▮▮▮▮▮▮▮▮



---

[1] Apotex's exhibits to its Motion and opening brief were originally labeled A through M, so Apotex's exhibits attached hereto are labeled N through P.

2

(Ex. P, Brittain Dep. Tr. at 171:7-11). In short, ▮

Even if Apotex's experts did agree with Cephalon's expert, that would not entitle Cephalon to use evidence selectively to mislead the jury. Fed. R Evid. 403.

The issues raised by this Motion are: (1) whether Cephalon should be allowed to disclose evidence selectively, and then to offer expert opinions to interpret that evidence in a manner that will mislead the jury; and (2) whether Cephalon waived the attorney-client privilege as to the withheld documents. Cephalon should either be required to produce the documents it has withheld ▮, or be precluded from offering selective evidence on this topic.

I. **DOCUMENTS THAT IMPEACH DEFENDANT'S EXPERTS CANNOT BE WITHHELD ON GROUNDS OF PRIVILEGE**

Cephalon intends to elicit detailed testimony in the direct examination of its experts ▮ (*See* Apotex Memo. in Sup. Of Mot. at 4-6). But emails from Cephalon's in-house counsel during that period (that were also disclosed to third parties) lead to precisely the opposite conclusion. In August 2005, for example, ▮. (*See* Apotex Memo. in Sup. Of Mot. at 6 (discussing Ex. F to Apotex Mem. in Sup. of Mot.)). ▮. (Cephalon Opp. Br. at 6.) But

3

Cephalon chooses to withhold crucial documents that could refute that conclusion from both their own experts and from plaintiffs' counsel. This is not fair or permissible, because it allows Cephalon's experts to mislead the jury in violation of Fed. R. Evid. 403. By shielding the impeaching documents under the guise of the attorney-client privilege, Cephalon is presenting misleading expert testimony based on partial evidence selected by its counsel. This thwarts Apotex's ability to conduct a full cross examination of those expert witnesses and, more importantly, stifles the jury's ability to consider the evidence fully and fairly.

In a recent decision by the Federal Circuit Court of Appeals, an alleged infringer of a patent sought privileged documents from the patentee in order to cross-examine one of the patentee's experts. *In Re MSTG, Inc.*, 675 F.3d 1337 (Fed. Cir. 2012). In that case, the patentee's expert relied upon an executive's business reasons for entering into a license agreement, but the patentee refused to disclose other documents about these license negotiations because of privilege. *Id.* at 1340. The court compelled disclosure of those privileged documents to give the infringer "the ability to test the accuracy" of the expert's opinions and assumptions. *Id.* at 1348. According to the Federal Circuit: "[a]s a matter of fairness MSTG [patentee] cannot at one and the same time have its expert rely on information about the settlement negotiations and then deny discovery as to those same negotiations." *Id.* at 1348.

The same point applies here. Cephalon counsel cannot at the same time have its experts rely on certain information about matters underlying ▇▇▇ and deny discovery as to those same matters under a cloak of privilege.

The Second Circuit Court of Appeals has also acknowledged that a privilege cannot be used as both a "sword and shield" with respect to an expert witness. *In re Bilzerian*, 926 F.2d. 1285, 1292 (2d Cir. 1991). Further, a defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes. *Id.* As

4

a result, the privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications. *Id.* at 1293. Significantly, the Court confirmed that "courts cannot sanction the use of the privilege to prevent effective cross-examination on matters reasonably related to those introduced in direct examination." *Id.*

Any assessment by Cephalon of ▇▇▇▇▇▇▇▇▇▇ would be closely related to the matters to be elicited on the direct examination of at least three Cephalon experts. Cephalon cannot have it both ways; it cannot elicit on direct examination expert opinions on whether ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, yet stifle effective cross-examination of those experts by withholding documents that can impeach their opinions. If Cephalon were allowed to proceed in this manner, it would blatantly mislead the jury in violation of Fed. R. Evid. 403.

Cephalon relies largely on the Third Circuit's decision in *Rhone-Poulenc Rorer, Inc. v. Home Indemnity Company*, 32 F.3d 851 (3d Cir. 1994). *Rhone-Poulenc* was decided a few years after the Second Circuit's *Bilzerian* and many years before the Federal Circuit's *MSTG*. None of these decisions are in conflict or even inconsistent. In *Rhone-Poulenc*, the court simply did not address the issue at hand; it did not deal with the withholding of documents that could be used to cross-examine and to impeach an expert witness. It did not face the question of whether the scope of a direct examination opens the door to the use of otherwise privileged documents for effective cross-examination. It did not even address the question of waiver of attorney client privilege in our context, that is, where lawyers for a party openly disclose their legal conclusions on patent infringement to competitors or to outsiders. Apotex of course has no quarrel with the Third Circuit's reasoning in *Rhone-Poulenc*, but that case just does not apply to these circumstances.

5

Cephalon cannot be allowed to conduct a wide-ranging direct examination of at least three expert witnesses while it stifles any opportunity by Apotex to conduct a full cross-examination of them. It cannot selectively use certain documents ▮▮▮ to gain a strategic advantage with its experts, but choose to withhold impeaching documents. This result would violate not only Fed. R. Evid. 403, but it would run afoul of both the spirit and letter of the Sixth Amendment.

## II. CEPHALON HAS WAIVED PRIVILEGE.

▮▮▮▮▮▮. Despite this litigation-driven reversal in its position, Cephalon audaciously argues that it gains no "unfair advantage" from its selective disclosure, and that its selective disclosure does not enable Cephalon to "present a one-sided story to the court" or raise a likelihood of prejudice to Apotex (*Id.* at 17, 18).

In truth, Cephalon is asking this Court to present just such a one-sided story. Cephalon's attempt to shield its misleading expert testimony from cross-examination is precisely the type of unfair advantage that should be not permitted under *Bilzerian* and Fed. R. Evid. 403. It raises the same "likelihood of prejudice" and impediment "to the truth-seeking process" that Cephalon itself implies is not an issue in this case. (Cephalon Opp. Br. at 18 (citing *In re Keeper of*

6

*Records*, 348 F.3d 16, 24 (1st Cir. 2003).).[2] The subject matter of ███████████, a fact which Cephalon does not contest. Accordingly, Cephalon has waived privilege regarding that subject matter, and certainly cannot offer misleading and contradictory testimony to the jury on the same issue while only withholding its own evidence on the same subject.

III. **APOTEX'S EXPERTS' TESTIMONY HAVE NO BEARING ON THIS DISPUTE, AND THEY DO NOT AGREE WITH CEPHALON'S EXPERTS.**

Cephalon irrelevantly argues that ████████████████████████████████████████ ██████████████████████████████████████████. (Cephalon Opp. Br. at 1, emphasis supplied). This is plainly false and, even if Cephalon were correct, it would have no relevance to the Motion before this Court.

First, the conclusions of Apotex's experts are completely irrelevant to this Motion. Cephalon has pointed to no case law in which the movant's experts' (supposed) admissions cure a waiver by another party. Cephalon has cited no testimony from Apotex's experts to explain the contradiction ████████████████████████████████. In no way does Apotex's expert testimony annul Fed. R. Evid. 403 and permit Cephalon to mislead the jury with expert testimony.

Second, Apotex's experts *do not agree* with Cephalon's experts, as Cephalon has claimed. Cephalon cites, out of context, the testimony of two different experts in its opposition

---

[2] *In re Keeper*, in addition to not being controlling caselaw, did not involve a party's attempt to offer misleading, selectively disclosed evidence to the jury under the guise of expert testimony while that same party concealed evidence on the same subject matter.

7

brief: Thomas Hoxie and Harry Brittain. Of these experts, Apotex retained only Mr. Hoxie.[3] Mr. Hoxie repeatedly concluded that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (*See, e.g.*, Ex. N, Hoxie Rep., ¶10; Ex. O, Hoxie Rebuttal Report ¶¶ 2-3). In no way does Mr. Hoxie agree that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, and in no way does Mr. Hoxie's testimony have any bearing on the outcome of this Motion.[4]

Cephalon also irrelevantly refers to the testimony of Dr. Harry Brittain, an expert not retained by Apotex. Dr. Brittain did not agree, as Cephalon claims, that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (Ex. P, Brittain Dep. Tr. at 171:7-11). Although Dr. Brittain acknowledged that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (*Id.* at 170:21-173:6). More importantly, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. As Apotex intends to prove at trial, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Neither ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

[3] Mr. Hoxie was also retained by other Plaintiffs, some of which also retained Dr. Brittain. Accordingly, some parts of Mr. Hoxie's opinions rely on, *inter alia*, Dr. Brittain's opinions.

[4] To the extent Cephalon's briefing merely attempts to prospectively discredit Mr. Hoxie, this attack is misleading and unavailing in addition to being irrelevant. Cephalon's own expert ▇▇▇▇▇▇

8

Mr. Hoxie's nor Dr. Brittain's testimony cures Cephalon's waiver of privilege or justifies Cephalon's misleading testimony to the jury.

IV. **APOTEX'S MOTION IS NOT A FISHING EXPEDITION, AND THE SCOPE OF THE DOCUMENTS REQUESTED IS A RESULT OF CEPHALON'S VAGUE PRIVILEGE CLAIMS.**

Cephalon dismisses Apotex's Motion as a "fishing expedition" and complains of the burden *in camera* review may impose on Cephalon and the Court. As Apotex explained in its opening brief, Apotex requested that Cephalon supplement its privilege claims to identify which documents related to ▮, but Cephalon refused to do so. (*See* Apotex Mem. in Sup. of Mot., at 14; *see also* Ex. M to Apotex Mem. in Sup. of Mot.).) At the very least, this Court could review *in camera* a sample of the documents requested by Apotex and identified to Cephalon, potentially beginning with Ex. G to Apotex's opening brief. (*See* Apotex Mem. in Sup. of Mot., at 6-7 (discussing Ex. G)). Apotex believes the onus to identify which withheld documents relate to the ▮ should fall on Cephalon, since only Cephalon possesses the information needed to make that determination. Of course, Apotex is open to discuss any potential solution that will assist the Court.

V. **CONCLUSION.**

For the foregoing reasons, and for those set forth in Apotex's opening brief, Cephalon has waived any privilege regarding its ▮, and it should not be permitted to present misleading testimony of its experts on this subject to the jury while shielding those witnesses from full cross-examination. Fed. R. Evid. 403. Defendant Cephalon should be ordered to produce the documents sought in Apotex's opening motion, or, in the alternative, it should be precluded from offering evidence regarding ▮.

9

Respectfully submitted,

Plaintiff APOTEX, INC.

By: /s/ Thomas J. Maas
    One of its Attorneys

Robert B. Breisblatt
Brian J. Sodikoff
Alexander Vesselinovitch
Thomas J. Maas
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661-3693
Phone: (312) 902-5200

Howard Langer
LANGER, GROGAN & DIVER P.C.
1717 Arch Street
Suite 4130
Philadelphia, PA 19103
Phone: (215) 320-5660

*Attorneys for Apotex, Inc.*

Dated: December 24, 2012

10

DRAFT 8/23/2012

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

APOTEX, INC.,

    Plaintiff

v.

CEPHALON, INC., <u>et al.</u>

    Defendants

CIVIL ACTION

No. 2:06-cv-2768-MSG

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on December 24, 2012, a copy of Reply of Plaintiff Apotex, Inc. in Support of its Motion to Preclude Evidence of to Compel Disclosure of Cephalon Documents was served via the Court's ECF system and via e-mail.

Dated: December 24, 2012

        /s/ Thomas J. Maas

Robert B. Breisblatt
Brian J. Sodikoff
Alexander Vesselinovitch
Thomas J. Maas
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661-3693
Phone: (312) 902-5200

Howard Langer
LANGER GROGRAN & DIVER, P.C.
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Phone: (215) 320-5661

*Attorneys for Apotex, Inc.*