**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| APOTEX, Inc., | CIVIL ACTION |
| *Plaintiffs* | No. 06-cv-2768-MSG |
| v. | |
| CEPHALON, INC., *et al.*, | |
| *Defendants*. | |

**DEFENDANTS' OPPOSITION TO APOTEX, INC.'S MOTION FOR LEAVE
TO DESIGNATE AND ADOPT PROFESSOR MAX H. BAZERMAN
AS AN EXPERT WITNESS**

In 2011, this Court set a schedule requiring Plaintiffs to designate experts and serve opening reports by April 26, 2011, and to serve any reply reports by July 1, 2011.  *See* March 8, 2011 Scheduling Order ¶ 2, Dkt. No. 425.   Although Apotex designated six experts in accordance with the scheduling order, including five experts also designated by other plaintiffs, it did not designate or join in the designation of Professor Bazerman, the FTC's proffered expert on decision-making and negotiation, nor did it offer its own expert on this topic.  Apotex now asks the Court to allow it to reverse course more than two-and-a-half years later, all because in July of last year Professor Bazerman purportedly changed his mind and agreed to work with Apotex.   But Apotex does not even attempt to explain why, if a negotiation expert is critical to its case, it did not simply retain another such expert before the applicable deadline, or why it has been pressing for a speedy trial on its antitrust claims all these years without one.

Moreover, Apotex does not explain why it has taken it so long to seek leave to designate Professor Bazerman, having purportedly engaged Bazerman more than six months ago on July

24, 2013.  When this case was reinstated in July 2013, the Court held a status conference and asked the parties to submit proposals for the supplemental expert discovery that should be conducted.  Although the FTC stated that it wished to designate a new expert (a replacement for its now-retired French patent law expert), Apotex kept quiet about Professor Bazerman.  *See* Apotex Inc.'s Proposed Discovery and Scheduling Plan, Dkt. No. 589 at 3 (July 31, 2013).  Apotex chose instead to try to add Professor Bazerman as its expert under the Court's radar, declaring over Defendants' objections that it "can and will" use Professor Bazerman.  On December 20, 2013, Apotex went ahead and attempted to formally designate Professor Bazerman without leave to do so.  Only now, after Defendants refused to waive their repeated objections to Apotex's departure from the scheduling order, does Apotex seek leave from the Court to allow it to do what it already attempted improperly to do.

Apotex acts as if the burden is on Defendants to justify holding Apotex to the scheduling order and claims that the motion for leave should be allowed because the late disclosure is harmless.  Yet Professor Bazerman had only been designated as an expert by the FTC in its case against Cephalon, and had never been designated as an expert in any case against the Generic Defendants.  Accordingly, Generic Defendants did not have a full and fair opportunity to counter Professor Bazerman's opinions during the expert discovery period in 2011.  Particularly given Apotex's failure to offer any convincing justification for the delay, Apotex's apparent long-held belief that it could proceed to trial without Professor Bazerman as an expert, the already busy expert deposition schedule, as well as the summary judgment, *Daubert*, and class certification briefing schedule, the additional discovery necessary to cure the prejudice to Generic Defendants would be unduly burdensome and unwarranted.

ActiveUS 124087469v.3

Apotex had ample opportunity under the 2011 scheduling order to designate Professor Bazerman (or any other expert for this subject area), and it did not. Apotex had ample opportunity this past summer to request leave to designate Professor Bazerman as a new expert, and it did not. The time for new experts is long gone, and Apotex's belated motion for leave should be denied.

## I.      BACKGROUND

In its case against Cephalon, the FTC retained and identified Professor Bazerman as its expert on the subject of negotiation. In accordance with the scheduling order, the FTC served Professor Bazerman's initial report on April 26, 2011, and his reply report on July 1, 2011. Neither Apotex nor any other private plaintiff designated a negotiation expert in this litigation. Cephalon took Professor Bazerman's deposition on August 3, 2011; again, in accordance with the scheduling order. While counsel for the Generic Defendants attended the deposition, Professor Bazerman was never designated as an expert by any plaintiff bringing claims against them. Ranbaxy's counsel examined Professor Bazerman only briefly to address allegations specific to Ranbaxy, but counsel for Teva, Mylan, and Barr did not examine Professor Bazerman at all.

Two-and-a-half years after the deadline to disclose experts, Apotex revealed to Defendants for the first time its intent to adopt Professor Bazerman's opinions. Grogan Decl. Ex. B, Letter from Vesselinovitch to Discovery Counsel (Oct. 24, 2013).[1] The Defendants objected to the forthcoming designation as untimely and unfairly prejudicial. *See* Exhibit A to the Declaration of Mark A. Ford in Support of Defendants' Opposition To Apotex's Motion For Leave To Designate And Adopt Professor Max H. Bazerman As An Expert Witness ("Ford

---

[1] References to the "Grogan Decl." are to the Declaration of John Grogan, filed with Apotex's Motion For Leave To Designate And Adopt Professor Max H. Bazerman As An Expert Witness, Dkt No. 664 (Feb. 7, 2014).

ActiveUS 124087469v.3

Decl."), Letter from Ford to Vesselinovitch (Oct. 31, 2013); *see also* Ford Decl. Ex. B, Letter from Skidmore to Vesselinovitch (Nov. 22, 2013).  Despite these objections, Apotex declared that Apotex "can and will" use Professor Bazerman however it sees fit without requesting leave of the Court.  Grogan Decl. Ex. C, Letter from Vesselinovitch to Skidmore (Nov. 6, 2013); *see also* Ford Decl. Ex. C, Letter from Vesselinovitch to Ford (Nov. 4, 2013).  Defendants maintained their objections, explaining that Apotex failed to "provide[ ] any explanation, much less a valid justification, for missing this deadline by two-and-a-half years"  (Grogan Decl. Ex. E, Letter from Ford to Vesselinovitch (Nov. 21, 2013)), and asserting that "[u]nless and until Apotex seeks leave of the Court to designate an expert out of time, it has no right to rely on or adopt any opinion offered by Professor Bazerman." Ford Decl. Ex. B, Letter from Skidmore to Vesselinovitch (Nov. 22, 2013).  More than a month later, on December 20, 2013, the date on which supplemental expert reports were due, Apotex attempted to formally assert its reliance on Professor Bazerman's prior reports and depositions notwithstanding Defendants' objections and their position that leave of the Court was required.  *See* Ford Decl. Ex. D, Email from Maas to Discovery Counsel (Dec. 20, 2013).

Recognizing the potential difficulties it would face if its untimely designation without leave was exposed at trial, Apotex sought to build a case that Defendants were waiving their previous objections to the Bazerman designation.  In January, while the parties were scheduling depositions of those experts that submitted supplemental reports (which Professor Bazerman did not do), Apotex asked Defendants to confirm that they were not "seeking to depose any other of Apotex's designated witnesses," listing Bazerman in the middle of six other experts who had not submitted supplemental reports.  *See* Ford Decl. Ex. E, Email from Maas to Discovery Counsel (Jan. 28, 2014); *see also* Ford Decl. Ex. F, Email from Maas to Discovery Counsel (Jan. 27,

2014) ("We understand that these are the only witnesses designated by Apotex for which Defendants are seeking depositions at this time; please let me know if that's correct.").  The Defendants, however, took the opportunity to reassert their standing objection to Apotex's belated attempt to designate Professor Bazerman, explaining, "[d]espite being fully aware that Apotex must seek leave of the Court to designate [Professor Bazerman] out of time, Apotex has not sought such leave."  Grogan Decl. Ex. F, Letter from Greg Skidmore to Alexander S. Vesselinovitch (Jan. 31, 2014).  One week later, Apotex filed this motion—nearly three years after the applicable deadline, nearly six months after retaining Professor Bazerman, and nearly one month after attempting to designate him unilaterally without leave of the Court.

## II.    ARGUMENT

Under Fed. R. Civ. P. 37(c)(1), if a party misses a deadline to disclose expert testimony it may not rely on that testimony "unless the failure [to abide by the scheduling order] was substantially justified or is harmless."  *AstraZeneca AB, et al. v. Mutual Pharmaceutical Co., Inc.,* 278 F.Supp.2d 491, 504 (E.D. Pa. 2003).   When assessing whether to permit late designation of expert testimony, courts within the Third Circuit consider (1) the prejudice suffered by the party or parties against whom the expert is offered; (2) "the ability of that party to cure the prejudice"; (3) the extent to which allowing the expert "would disrupt the orderly and efficient trial of the case"; (4) evidence of willfulness or bad faith in failing to comply with the court's order; and (5) the importance of the expert's testimony.  *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977) (the *Meyers* factors).

In applying the *Meyers* factors to the present motion, the four core principles discussed in the following sections should guide the Court's discretion.

5

### A.   As A Sophisticated Litigant, Apotex Has A High Burden To Justify Departing From Scheduling Orders, And Has Failed To Do So Here

First and foremost, this motion is not based on any sudden need to address a new, unexpected issue or development in the case.[2]   Indeed, Apotex provides no convincing justification at all for its delay.  The only excuse Apotex can muster is an unsupported claim that Professor Bazerman previously declined to work for Apotex and later changed his mind.  (Mem. at 4).  But even if that were the case, Apotex does not explain why it could not or did not hire a different negotiation expert before the 2011 deadline.  *See AstraZeneca,* 278 F.Supp.2d at 508 (E.D. Pa. 2003) (precluding submission of an untimely expert opinion because the submitting party "offered no bona fide excuse for its dilatory conduct.").

Although Apotex gives short treatment to its purported justification in its brief, its burden is a high one.  Where (as here) a sophisticated party represented by experienced counsel violates a scheduling order, courts should "not lightly disturb … the enforcement of [its] deadlines" because "[a]dhereing to reasonable court deadlines is critical to restoring integrity to court proceedings."  *AstraZeneca*, 278 F. Supp. 2d at 509 (explaining that courts are also far more lenient when individual plaintiffs violate scheduling orders—as was the case in *Meyers* itself— than they are in cases involving large business entities with highly competent counsel) (*quoting Trilogy Communications, Inc. v. Times Fiber*, 109 F.3d 739, 744 (Fed. Cir. 1997)).  The Court is well within its discretion, therefore, to demand a compelling explanation for why Apotex did not obtain a negotiation expert in accordance with the scheduling order, and Apotex has not provided one.

---

[2]      Apotex relies heavily on cases in which a party discloses a new expert opinion late in order to address a new, unexpected issue injected into the case.  *See, e.g., Soufflas v. Zimmer, Inc.,* 474 F. Supp. 2d 737, 745 (E.D. Pa. 2007) (allowing late designation because after a new medical issue was raised in the Defendant's expert report, and "[o]nce the issue surfaced, Plaintiff acted diligently to obtain a rebuttal report.").  Such cases are inapplicable here.

ActiveUS 124087469v.3

**B.    Apotex's Own Conduct Demonstrates that Bazerman's Opinion is Not Critical to Its Antitrust Claims And Therefore Preclusion Is Appropriate**

Any attempt by Apotex to justify the designation of a negotiation expert at this late stage should fail because, for the past few years, Apotex, like all other private plaintiffs, has pressed forward toward trial without retaining any negotiation expert. Indeed, if Apotex had its way, it would have already tried this case to a jury long before Bazerman purportedly decided he would be willing to work for Apotex. *See* Tr. of Dec. 26, 2011 Status Conf. at 69:19-21 (Apotex counsel requesting an August 2012 trial date). For that reason alone, Apotex's assertion that such an expert is now "key" to a fair adjudication of its claims, (Mem. at 2, 8), rings hollow.

This is significant because, among the *Meyers* factors listed above, the importance of the evidence "is often the most significant factor." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298 (3d Cir. 2012). Apotex stresses in its motion that refusal to allow late-disclosed expert testimony is an "extreme" and "disfavored" sanction, but Apotex misreads the cases it cites. Mem. at 7 (citing *Soufflas*, 474 F. Supp. 2d at 745 n.4). The case law actually holds that preclusion is disfavored only when the evidence is "critical." *See Meyers*, 559 at 905 ("We have recently held that the exclusion *of critical evidence* is an 'extreme' sanction…."). Here, as shown by Apotex's own behavior, the Bazerman opinion is far from critical.

**C.    Apotex Has Demonstrated Flagrant Disregard For The Court's Scheduling Order**

Apotex's motion is perhaps most remarkable for its claim that Apotex is trying to be "pro-active" by seeking leave of Court when for the past several months Apotex stubbornly resisted Defendants' position that such leave was required. Mem. at 5. Had Apotex been pro-active, it would have retained a negotiation expert in 2011, or at least it would have raised its desire to designate Bazerman with the Court soon after Apotex retained him on July 24, 2013. Mem. at 4. At that time, the parties were negotiating supplemental expert discovery, and the

ActiveUS 124087469v.3

FTC had requested leave to replace its French patent law expert, Jacques Warcoin. *See* Apotex Inc.'s Proposed Discovery and Scheduling Plan, Dkt. No. 589 at 3 (July 31, 2013).   Instead, as detailed above, Apotex is not only trying to add a new expert two-and-a-half years late over Defendants' objections, but for the past six months, has done so without leave of the Court.

This six month delay (on top of the two-and-a-half year delay) is another compelling reason to deny Apotex's motion.  If the delinquent party has behaved with a "flagrant disregard" for the court's scheduling order, that justifies preclusion regardless of whether or not the party acted in bad faith.  *See Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 n.3 (3d. Cir. 1997) ("Because we find that this case involves a 'flagrant' violation of pretrial order, we do not reach the question whether it also involved 'willful deception.'") (quoting *Meyers*, 559 F.2d at 905); *see also AstraZeneca*, 278 F. Supp.2d at 508 (allowing late reports would demand that the Court "simply [ ] ignore the pre-trial scheduling orders.").

> **D.    Apotex's Late Designation Is Not Harmless And Defendants Should Not Bear Unnecessary Burden To Cure Apotex's Unjustified Delinquency**

Lacking any compelling explanation for its late change of course or refusal to seek leave in a timely fashion, Apotex tries improperly to shift the burden to the Defendants to justify why the Court should demand compliance with its scheduling orders.  Mem. at 2, 5–8.  First, Apotex argues that no harm will flow from its decision to adopt Bazerman's prior reports and testimony because those prior reports were disclosed by the FTC in its case against Cephalon and because counsel for Generic Defendants attended Cephalon's deposition of Bazerman.  *Id.* at 6. However, neither Professor Bazerman nor any other negotiation expert had ever been disclosed as an expert *against the Generic Defendants* in this litigation under the schedule and procedures established by the Court, and, as a result, Generic Defendants have been denied the opportunity fully and fairly to address and counter those opinions.  Notably, while Apotex previously tried to

8

ActiveUS 124087469v.3

distance itself from an FTC expert it did not retain for its case (*see* Reply of Plaintiff Apotex, Inc. in Support of Its Motion to Preclude Evidence or to Compel Disclosure of Cephalon Documents, Dkt. No. 573 at 2 (Dec. 26, 2012) ("Cephalon also cites an expert not even retained by Apotex…."))), it now wants to have it both ways, and asks the Court to blur that very distinction to the detriment of Generic Defendants.

Apotex's further position that the late disclosure is harmless because trial is as yet unscheduled proves too much.  The fact that trial has not yet been scheduled or is not imminent should not insulate an unjustified deviation from the pretrial scheduling order, otherwise any discovery deadline would be virtually meaningless until trial is scheduled.  In *AstraZeneca*, for example, the court excluded expert evidence first disclosed near the summary judgment deadline notwithstanding the fact that trial had not yet been scheduled.  278 F. Supp. 2d at 508. According to the court in that case, the fact that the late disclosure was unjustified and would result in a delay of *pretrial* proceedings warranted preclusion of the evidence, even if providing additional discovery could theoretically cure the prejudice in advance of trial.  *Id.* at 508-509; *see also Exxon Corp. v. Halcon Shipping Co., Ltd.*, 156 F.R.D. 589, 591 (D.N.J. 1994) (affirming the exclusion of late expert testimony, holding "parties are entitled to some certainty").  In short, the court explained, parties "are entitled to resolution of the case in accordance with the pretrial schedule."  *AstraZeneca*, 278 F. Supp. 2d at 509.

Accordingly, to be sure, the Court could order Apotex to make Bazerman available for deposition by Generic Defendants and grant Generic Defendants leave to counter Bazerman's opinion with expert opinion of their own, but with the press of supplemental expert discovery as well as upcoming summary judgment, *Daubert*, and class certification motions, Generic Defendants should not be put to the burden necessary to cure the prejudice caused by Apotex's

ActiveUS 124087469v.3

unnecessary and delinquent disclosure.  *See AstraZeneca*, 278 F. Supp. 2d at 507 (opportunity for opposing party to take additional discovery does not justify late disclosure, holding "such a procedure would not only reward Defendant's multiple violations of pretrial procedures, but would also not be fair to Plaintiffs, and would, further, seriously delay any resolution of this litigation….").

## III.    CONCLUSION

In light of Apotex's flagrant disregard for the Court's scheduling orders and procedures, its failure to justify its delay or show a critical need for Professor Bazerman's testimony, and prejudice to the Generic Defendants, Apotex's motion should be denied.  If the Court does grant the motion, the Generic Defendants request leave to depose Professor Bazerman, as he has never been designated as an expert in a case against the Generic Defendants.


February 20, 2014


Respectfully submitted,


|  */s/ Mark A. Ford* | */s/ Gregory Skidmore (with permission)* |
| --- | --- |
| James C. Burling | Gregory L. Skidmore |
| Peter A. Spaeth | Karen N. Walter, P.C. |
| Mark A. Ford | Jay P. Lefkowitz, P.C. |
| WILMER CUTLER PICKERING | John C. O'Quinn |
| HALE AND DORR LLP | KIRKLAND & ELLIS LLP |
| 60 State Street | 655 Fifteenth Street, NW |
| Boston, MA  02109 | Washington, DC 20005 |
| (617) 526-6000 | (202) 879-5000 |
| | |
| John A. Guernsey | Richard L. Scheff (ID #35213) |
| Nancy J. Gellman | MONTGOMERY, MCCRACKEN, WALKER & |
| CONRAD O'BRIEN PC | RHOADS LLP |
| 1500 Market Street | 123 South Broad Street |
| Centre Square | Philadelphia, PA  19109 |
| Philadelphia, PA  19102 | (215) 772-7502 |
| (215) 864-9600 | |
| | *Counsel for Barr Laboratories, Inc.* |
| *Counsel for Cephalon, Inc.* | |

ActiveUS 124087469v.3

/s/ C. Fairley Spillman (with permission)
Katherine M. Katchen (ID #803395)
Matthew R. Varzally (ID # 93987)
AKIN GUMP STRAUSS HAUER & FELD LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA 19103
(215) 965-1200

Paul B. Hewitt
C. Fairley Spillman
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036
(202) 887-4000

*Counsel for Mylan Inc. (formerly known as Mylan Laboratories, Inc.) and Mylan Pharmaceuticals Inc.*

/s/ Danielle R. Foley (with permission)
J. Douglas Baldridge
Lisa Jose Fales
Danielle R. Foley
VENABLE LLP
575 7th Street, NW
Washington, DC 20004
(202) 344-4000

Anthony S. Volpe (ID #24733)
John J. O'Malley (ID #68222)
VOLPE AND KOENIG, P.C.
United Plaza, 30 South 17th Street
Philadelphia, PA 19103-4009
(215) 568-6400

*Counsel for Ranbaxy Laboratories, Ltd. and Ranbaxy Pharmaceuticals, Inc.*

Joseph Wolfson (with permission)
Joseph Wolfson (ID #44431)
STEVENS & LEE, P.C.
620 Freedom Business Center
Suite 200
King of Prussia, PA 19406
(610) 205-6001

*Counsel for Teva Defendants*

11

## CERTIFICATE OF SERVICE

I certify that on the date set forth below Defendants' Opposition To Apotex, Inc.'s

Motion For Leave To Designate And Adopt Max H. Bazerman As An Expert Witness,

Declaration of Mark A. Ford and proposed Order were electronically filed pursuant to the

Court's CM/ECF system, and that those documents are available for downloading and viewing

from the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation

of the CM/ECF system.


*s/ Nancy J. Gellman*
Nancy J. Gellman


Date:  February 20, 2014

12