**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| APOTEX, INC.,<br><br>        *Plaintiff*,<br><br>v.<br><br>CEPHALON, INC., *et al.*,<br><br>        *Defendants*. | Civil Action No. 2:06-cv-2768-MSG |

**APOTEX'S REPLY IN SUPPORT OF ITS MOTION FOR RECONSIDERATION
OF THE COURT'S ORDER OF MARCH 13, 2014 (DKT. NO. 680)**

I.      **Introduction**

In its opening brief, Apotex established the substantive and procedural requirements for reconsideration of the Court's summary judgment decision on preclusive effect, which would require Apotex to re-prove Cephalon's intent in deceiving the PTO to secure the '516 patent. *See generally* Dkt. No. 680, Apotex's Mot. for Reconsideration (hereinafter "Motion").

Substantively, Apotex showed: (1) the issue of intent to deceive is squarely within the mandate of the Federal Circuit as a necessary element of inequitable conduct, and thus the mandate rule and Fed. R. Civ. P. 60 – not Fed. R. Civ. P. 42(b) and related considerations – controls the Court's analysis of preclusive effect; and (2) none of the limited exceptions to the mandate rule apply here. That is because, at all times, only one fact finder could make the final decision on whether intent to deceive exists. The intent to deceive finding inherent in the Federal Circuit's mandate is such a final decision and must be binding in the remainder of Apotex's case, unless vacated under Rule 60.

Procedurally, Apotex demonstrated that the Court did not fully consider the mandate rule of the law-of-the-case doctrine in making its determination. *See, e.g.*, Motion at 2-3. In its response, Cephalon recognized that it is proper for the Court to reconsider a holding to address "factual and legal matters that the Court may have overlooked." Dkt. No. 721, Cephalon's Opposition to Apotex's Motion (hereinafter "Opposition") at 4 (citing *Donovan v. Idant Labs.*, 625 F. Supp. 2d 256, 274 (E.D. Pa. 2009), *aff'd*, 374 F. App'x 319 (3d Cir. 2010)). In *Donovan*, the court initially denied the defendant's motion to dismiss claims of strict liability and breach of warranty. The defendant filed a motion for reconsideration raising an argument not in the original opening motion and only briefly mentioned in the reply. *Donovan*, 625 F. Supp. 2d at 274 n.2. Still, the court considered the argument: "I will consider defendant's motion for reconsideration although these issues were not adequately briefed in its original motion to

dismiss or its reply." *Id.* at 274. The court then dismissed based on that reconsideration, and was affirmed on appeal. *Id.* at 276. Here, Apotex has always argued that the Court's finding of intent, affirmed by the Federal Circuit, is binding on Cephalon under the law-of-the-case doctrine, which encompasses the mandate rule.[1] This Court, under *Donovan*, has the discretion to consider the mandate rule, and should exercise that discretion to come to the proper conclusion on this important issue in this case. *See Casey v. Planned Parenthood of Se. Pa.*, 14 F.3d 848, 863 (3d Cir. 1994) (failure to adhere to mandate can result in reversal of subsequent judgment).[2]

## II. Argument

### A. Cephalon's Intent to Deceive Was a Necessary Element of the Federal Circuit's Affirmance and Falls Squarely within the Federal Circuit's Mandate; Thus the Finding of an Intent to Deceive Is Controlling.

Apotex is seeking reconsideration on the issue of the preclusive effect of the factual finding that Cephalon had an intent to deceive the PTO in procuring the '516 patent. The issue is whether intent to deceive falls under the Federal Circuit's mandate affirming inequitable conduct.

A mandate is controlling as to issues decided by the higher court. *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895) ("Whatever was before [the Supreme Court], and disposed of by its decree, is considered as finally settled."). Apotex established this in its opening brief:

> The mandate rule *requires* a district court to follow the mandate issued by an appellate court in later proceedings in the same case, absent exceptional circumstances. *See Briggs v. Pa. R. Co.*, 334 U.S. 304, 306 (1948) ("an inferior court has no power or authority to deviate from the mandate issued by an appellate court.").

---

[1] Apotex also cited to Cephalon's failure to argue violation of a jury trial right on appeal. *See* Dkt. No. 644, Apotex's Reply in Support of Partial Summary Judgment at 20.
[2] It is ironic that Cephalon relies on statements (p. 5) that the Supreme Court and the Third Circuit have made that "courts should be loathe to [revisit prior decisions] in the absence of extraordinary circumstances." Ultimately, Apotex is seeking to revisit one issue addressed in a recent opinion, while Cephalon is in effect seeking to revisit a full intent-to-deceive decision made after a complete trial and subsequent appeal.

Motion at 2. Cephalon (pp. 5-6) does *not* disagree, admitting that the mandate rule is "controlling as to matters within its compass [but not controlling as to other issues]." Opposition at 5-6 (citing, *inter alia*, *Habecker v. Clark Equip. Co.*, 942 F.2d 210, 217 (3d Cir. 1991) and *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475, 1484 (Fed. Cir. 1998) ("[F]ollowing appellate disposition, a district court is free to take any action that is consistent with the appellate mandate, as informed by both the formal judgment issued by the court and the court's written opinion.")). Cephalon even specifically admits (p. 6) the Court's finding of inequitable conduct is binding: "In this case, there is no dispute that the finding of inequitable conduct became binding once affirmed." Cephalon just fails to appreciate the next logical step: the underlying finding of intent is just as binding.

Intent to deceive was "within the compass" of the Federal Circuit's affirmation of inequitable conduct. Importantly, "within the compass" includes all issues "decided either expressly or by necessary implication." *See Concept Design Elecs. & Mfg., Inc. v. Duplitronics, Inc.*, 104 F.3d 376, at *5 (Fed. Cir. 1996) (internal citation omitted); *Toro Co. v. White Consol. Indus., Inc.*, 383 F.3d 1326, 1335 (Fed. Cir. 2004).[3]

As Apotex showed, "[i]ntent to deceive has always been a necessary element of an inequitable conduct claim." Motion at 10 (citing *Star Sci. Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008)). This Court found Cephalon had an intent to deceive. Dkt. No. 674, Mem. Op. at 6 (citation omitted) ("Based on these conclusions, I found that Cephalon acted with specific intent to deceive the PTO."). This finding was essential to the judgment, and thus the resulting mandate affirming that judgment. *Id.* at 13 (citations omitted) ("[A]ll of the issues resolved in the Apotex patent litigation—including the alternative justifications for

---

[3] This controlling legal point was made in Apotex's opening brief (p. 7). Neither these cases nor their holding was distinguished by Cephalon.

3

holding the patent invalid—were essential to the judgment entered against Cephalon."). Cephalon did not, and cannot, rebut that intent to deceive is within the mandate.

Put another way, as a *factual* matter, Cephalon either had an intent to deceive in procuring the '516 patent, or it did not have one. Because this factual matter was resolved by this Court and affirmed with a mandate, it is law of the case. *Laborers Int'l Union of N. Am., FFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 396-97 (3d Cir. 1994) (factual decisions explicitly reached or reached by necessary inference become the law of the case if not contested on appeal). There is no middle ground where Cephalon had an intent to deceive for some claims (inequitable conduct), but could have a jury rule the other way in the antitrust claims (*e.g.*, *Walker Process* fraud). *Bolden v. S.E.P.T.A.*, 21 F.3d 29, 31-32 (3d Cir. 1993); *Speeney v. Rutgers, The State Univ.*, 369 F. App'x 357, 360 (3d Cir. 2010) (non-precedential) (citation omitted) ("A jury verdict cannot stand if there is no possible way for it to be reconciled with the law of the case.").[4] Because the inequitable conduct issue is binding by Cephalon's own admission, and required as a factual matter an intent to deceive, that fact is part of the mandate and binding in the later jury trial.

The cases Cephalon cites (pp. 5-6) do not require a contrary holding. First, each of those recognized that law of the case *does* apply to issues within the compass of the first appellate determination. *See, e.g.*, *Habecker v. Clark Equip. Co.*, 942 F.2d 210, 217 (3d Cir. 1991); *Exxon Chem. Patents, Inc., v. Lubrizol Corp.*, 137 F.3d 1475 (Fed. Cir. 1998); *Glaberson v. Comcast Corp.*, 295 F.R.D. 95, 99 (E.D. Pa. 2013). Second, in those cases there was no preclusion

---

[4] Cephalon states (p. 7) it would be possible to reconcile a jury verdict of no antitrust liability with the binding holding of intent to deceive, which is to say there may be other valid bases by which a jury could deny Apotex's antitrust claim. But that is no reason to proactively put before the jury an *invalid* basis, that Cephalon may not have had an intent deceive the PTO. The jury should decide the case on valid bases only. The leading case cited (pp. 6-7) by Cephalon for the proposition that potentially inconsistent results do not overcome a jury right, *Lytle v. Household Manufacturing, Inc*., 494 U.S. 545, 552-53 (1990), made no such holding. In *Lytle*, the court reversed the equitable finding because it could be inconsistent with *subsequent* legal findings. *Id.* at 555-56. Here, Cephalon did not challenge the equitable finding, and instead admitted it is binding.

because the issue had not been specifically determined in the first case. In *Habecker*, the court ruled that the mandate that issued after a first trial on liability did not address a completely new theory of liability that was only raised prior to the second trial. 942 F.2d at 212, 217-18. Similarly inapplicable is *Exxon*, 137 F.3d at 1484, on which Cephalon mistakenly relies. There, the issue on appeal was literal infringement, and the mandate that issued merely said "reversed." *Id.* at 1483-84. The appellate court found that the district court was able to entertain a new trial on a separate theory of infringement under the doctrine of equivalents. *Id.* at 1484; *see also Glaberson*, 295 F.R.D. at 102-03 (similar). Here, by contrast, the intent to deceive is the exact same issue.

## B. None of the limited exceptions to the mandate rule apply.

In its opposition brief, Cephalon argues that the mandate rule is not absolute. *See, e.g.*, Opposition at 6 (citing *United States v. Bell*, 988 F.2d 247, 250-51 (1st Cir. 1993) and *Banco Nacional de Cuba v. Farr*, 383 F.2d 166, 178 (2d Cir 1967)). Apotex does not disagree. But it is not as flexible as Cephalon's brief suggests. The mandate rule is critical in our system of justice, where appellate court decisions take primacy and cannot be collaterally attacked. As a result, the mandate rule applies in almost all cases, and when it does, as Cephalon admits (p. 5), it "requires a district court to abide by rulings of the court of appeals in the case." The exceptions to the mandate rule are narrow and require truly exceptional circumstances: (1) evidence presented at a subsequent trial was substantially different from the original evidence; (2) controlling authority since the appeal has made a contrary and applicable decision regarding the law; or (3) the decision was clearly erroneous "and would work a manifest injustice." *Banks v. United States*, 741 F.3d 1268, 1276 (Fed. Cir. 2014) (citation omitted). None apply here.

5

Cephalon implicitly admits that exception (1) is inapplicable here. All evidence of Cephalon's intent to deceive in procuring the '516 patent (which occurred years prior to trial) was available to Cephalon and presented at trial.

Exception (2) requires a change in controlling authority *since* the appeal.[5] That is because if there is a change of law before the appeal, it is incumbent on the parties to raise it, and all necessary consequences, through motion practice before the district court or on appeal. Here, *Therasense* came down as controlling authority *before* this Court issued its opinion and before the Federal Circuit heard the appeal, made its decision, and issued mandate. If Cephalon had a jury trial right, it was obligated to raise the issue then so that this Court and the Federal Circuit could consider it before employing resources to reach a decision. Failing to do so, Cephalon's rights, assuming they were preserved and not waived earlier, were waived when not raised before mandate. *See generally Laborers*, 26 F.3d at 398.

Assuming, *arguendo*, that the structure of the trial became improper when *Therasense* issued (i.e., because the structure took from Cephalon the right to present intent to a jury), that structure was *immediately* appealable because all interlocutory orders – including those that structure trial – merge with the final judgment and become immediately ripe for appeal. *See* 6 *Moore's Federal Practice* ¶ 54.28 (3d ed.) (upon entering final judgment, all interlocutory orders become ripe for appeal); *Elfman Motors, Inc. v. Chrysler Corp.*, 567 F.2d 1252, 1253 (3d Cir. 1977) (same).

In each of the leading cases, the Seventh Amendment issue was raised *at least* by the time structure of the trial was merged with the first final judgment and thus ripe for appeal. In

---

[5] This is another difference between the application of collateral estoppel and the mandate rule under the law of the case. This Court considered the change in law of *Therasense*, which occurred after trial but before this Court's decision or appeal, as a factor counseling against applying collateral estoppel. However, the change in law of *Therasense* being *before* appellate mandate does not qualify as a basis to not follow a mandate.

6

*Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504 (1959), the challenge was raised by writ of mandamus. In the others (*Lytle*, *Shum*, and *Roebuck*[6]) it was raised on appeal when the court's structuring of trial was merged with the final judgment made in equity.[7] The leading case considering a challenge to a final judgment, *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 337 (1979), did not find a jury trial violation. Relatedly, Rule 42 precedent regarding the order of trial is inapplicable here because any issue Cephalon had with the bifurcation has been waived by not raising it on, or prior to, appeal. *See Laborers,* 26 F.3d at 398. Because we have a final judgment with mandate, the mandate rule and its extremely limited exceptions apply.

Cephalon does not rebut the black letter law that the Court's structuring of the trial and decision on intent merged with this Court's first judgment and were thus ripe for appeal. Yet Cephalon makes an argument (p. 7) that it should be exempted from this rule because it had no reason to raise the issue earlier. Legally, Cephalon's argument would eviscerate the role of final judgments and the merger rule, where the structuring of trial is immediately appealable. Intent to deceive was a key overlapping factual issue between the patent and antitrust claims. At all times, only one fact finder could make the *final*[8] decision on whether intent to deceive exists.[9] Factually, Cephalon knew in the Rule 54(b) briefing, which also merged with the final judgment, that preclusive effect was sought. If the wrong entity was asked to make that factual decision, of course there is a reason to raise that issue immediately, either before the Court or on appeal. *See*

---

[6] *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 549-50 (1990) (issue raised on appeal from judgment made in equity); *Shum v. Intel Corp.*, 499 F.3d 1272, 1276 (Fed. Cir. 2007) (same); and *Roebuck v. Drexel Univ.*, 852 F.2d 715, 737 (3d Cir. 1988) (same).

[7] Cephalon argues (p. 9) that in each of the cases "a party challenged a decision affecting its Seventh Amendment rights that *already* had been made." (Emphasis in original.) But this argument is easily shown as inapposite – here, just like in those cases, the "decision[s] affecting [Cephalon's] Seventh Amendment rights" *had* already been made – it was this Court's finding of fraud affirmed on appeal.

[8] *Bowers* does not control because there, the court was not bound by an appellate court's mandate. *See Bowers v. City of Phila.*, Civ. No. 06-3229, 2008 WL 5234357 (E.D. Pa. Dec. 12, 2008).

[9] Cephalon is not asserting it would be proper to have two fact finders determine the same issue. It is not the factual finding of intent, but rather who made it, that Cephalon is challenging.

*Shum v. Intel Corp.*, 499 F.3d 1272, 1279 (Fed. Cir. 2007) (finding the district court's decision to bifurcate and hold a bench trial on the equitable claims before a jury trial on the legal claims was in error). That is precisely why Cephalon waived its jury right.

The rule requiring immediate appeal of the Court's structure of trial (holding a bench trial to determine intent) applies even if it is assumed Cephalon was not on notice of its jury trial rights until *Therasense* issued. As discussed earlier, the change-of-law exception only applies to new law *after* the appellate decision, because a party should rightfully raise the issue on appeal to avoid piecemeal collateral attacks on district court and appellate decisions. Cephalon could have raised a jury trial right after the trial (before the decision), after the decision but before certification under Rule 54(b), or on appeal. *See* Motion at 11. It failed to do so, so the decision is binding.

Once a final judgment is entered, applying law of the case is really more of a procedural formality. A jury cannot determine a factual issue contrary to the law of the case. *Speeney v. Rutgers, The State Univ.*, 369 F. App'x 357, 360 (3d Cir. 2010) ("A jury verdict cannot stand if there is no possible way for it to be reconciled with the law of the case."). Ensuring that does not happen should be a question of what procedure to utilize, e.g., entry of summary judgment, jury instructions, or selecting what issues to present to jury.

Cephalon's take on the law – that jury trial rights need not be raised until the impact of a prior judgment is solidified – would result in extreme waste. After investment in a full bench trial and appeal by the courts and parties, whichever party loses would be able to assert a jury trial violation years later when the natural result of that judgment – preclusive effect – was being firmly established. That cannot be, and is not, the law.[10]

---

[10] Cephalon cites to statements that judicial expediency does not trump Seventh Amendment rights. But in those cases the first decision was made under procedural protest, i.e., over a claim of a Seventh Amendment violation.

8

Finally, exception (3) does not apply.  Cephalon has failed to cite a single case that finds the Seventh Amendment is violated by applying preclusive effect to an issue necessary to a court's final judgment, when that judgment was affirmed with a mandate.  There is no manifest injustice or clear error in holding Cephalon to the finding of intent.  By agreement, both parties submitted to the Court factual issues relating to the '516 patent, including validity, intent, and infringement.  Depending on the Court's findings, both parties had much to lose, or gain, in relation to their antitrust claims and defenses.  Both went in with eyes wide open.  It is only fair to not force Apotex to retry the same issues.  This Circuit's reasoning in *Speeney* demonstrates it would *not* be clear error to hold Cephalon to this Court's earlier finding of intent:

> Appellants rely largely on *Lytle v. Household Manufacturing, Inc.*, 494 U.S. 545 (1990), a case in which the Court held that — although 'an equitable determination can have collateral-estoppel effect in a subsequent legal action and that this estoppel does not violate the Seventh Amendment,' *id.* at 550-51 (emphasis in original) — the Seventh Amendment precludes according collateral estoppel effect to a district court's determination of issues common to equitable and legal claims where equitable and legal claims are brought in the same action and the district court improperly dismissed the legal claims. *Id.* at 555 ("We decline to extend *Parklane Hosiery Co.*, *supra*, and to accord collateral-estoppel effect to a district court's determinations of issues common to equitable and legal claims where the court resolved the equitable claims first solely because it erroneously dismissed the legal claims. To hold otherwise would seriously undermine a plaintiff's right to a jury trial under the Seventh Amendment."). Here, however, the District Court did not mistakenly take up equitable claims that would cut off legal claims that should go to a jury.  Instead, the District Court took up, at the Appellants' own insistence, the Appellants' own motion to disqualify CBM. The Appellants filed the motion presumably knowing that the question of whether an attorney-client relationship existed between CBM and the Appellants was central to both the disqualification motion and to their malpractice claim.  Hence, since the Appellants themselves made the pre-trial motion to disqualify CBM as Rutgers' counsel, knowing that this would require a judicial determination of whether there was an express or implied attorney-client

---

The wasted litigation efforts should never have happened in the first place and were not the fault of the party. Here, there was no assertion of a jury trial violation by Cephalon before the trial, after the trial, or during the appeal.  To the contrary, Cephalon specifically requested the Court determine intent in the patent phase.  Cephalon has no right to retry an issue determined by the Court, under no original protest.  The preclusion on intent is simply a naturally flowing result from this Court's decision and the Federal Circuit's mandate.

>relationship between CBM and Appellants, the present case is clearly distinguishable from *Lytle*.

*Speeney*, 369 F. App'x at 360 n.4; *see also Wilcher v. City of Wilmington*, 139 F.3d 366, 378-79 (3d Cir. 1998). Here, like in *Speeney*, this Court did not mistakenly take up equitable claims. Cephalon specifically requested that inequitable conduct be determined by the Court. *See* Dkt. No. 674, Mem. Op. at 15 (the Court noting that "Cephalon specifically suggested that Apotex's inequitable conduct claim remain part of the patent trial . . . .").

Here, also like in *Speeney*, Cephalon "presumably kn[ew]" that the factual matter of intent to deceive was "central" to both the inequitable conduct and *Walker Process* claim. *See Speeney*, 369 F. App'x at 360 n.4; *Cabinet Vision v. Cabnetware*, 129 F.3d 595, 600 (Fed. Cir. 1997) ("[T]he facts underlying Cabnetware's inequitable conduct defense and its *Walker Process* counterclaim possess 'substantial commonality'. . . ."). In *Speeney*, the earlier decision given preclusive effect was a court ruling on a pretrial motion to disqualify. If a party's submission of a factual issue to a court through pretrial motion is sufficient to demonstrate no jury trial violation, then Cephalon's request of this Court to determine intent (as part of inequitable conduct), in a full trial, followed by a request to an appellate court to review that same factual issue, in a full appeal, surely demonstrates the same. Applying preclusive effect would follow *Speeney* and would not qualify under exception (3) to the mandate rule.

### III.   Conclusion

For the foregoing reasons, Apotex respectfully requests the Court grant its Motion for Reconsideration of the Court's Order of March 13, 2014 and follow the mandate that Cephalon had a specific intent to deceive the PTO in securing the '516 patent.

| | |
|---|---|
| Date: May 5, 2014 | /s/ Brian J. Sodikoff |
| | |
| | Robert B. Breisblatt |
| | Brian J. Sodikoff |
| | Alexander S. Vesselinovitch |
| | Thomas J. Maas |
| | KATTEN MUCHIN ROSENMAN LLP |
| | 525 West Monroe Street |
| | Chicago, Illinois 60661-3693 |
| | Phone: (312) 902-5200 |
| | |
| | Howard Langer |
| | LANGER GROGAN & DIVER, P.C. |
| | 1717 Arch Street, Suite 4130 |
| | Philadelphia, PA 19103 |
| | Phone: (215) 320-5661 |
| | |
| | *Attorneys for Apotex, Inc.* |