## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KING DRUG COMPANY OF FLORENCE, INC., et al., | : : : | CIVIL ACTION |
| Plaintiffs, | : : | |
| v. | : : | No. 2:06-cv-1797 |
| CEPHALON, INC., et al., | : : | |
| Defendants. | : | |
| VISTA HEALTHPLAN, INC., et al., | : : | CIVIL ACTION |
| Plaintiffs, | : : | |
| v. | : : | No. 2:06-cv-1833 |
| CEPHALON, INC., et al., | : : | |
| Defendants. | : | |
| APOTEX, INC., | : : | CIVIL ACTION |
| Plaintiff, | : : | |
| v. | : : | No. 2:06-cv-2768 |
| CEPHALON, INC., et al., | : : | |
| Defendants. | : | |

**Goldberg, J.**                                                                        **December 17, 2015**

### MEMORANDUM OPINION

     This antitrust case involves four Hatch-Waxman reverse-payment settlement agreements.

These settlement agreements were entered into by Cephalon, Inc., the manufacturer of the brand-

name pharmaceutical Provigil, and four generic drug companies.[1]  Plaintiffs, the Direct Purchasers of Provigil (including the Individual Plaintiffs[2]), the End Payors of Provigil, and a generic competitor, Apotex, Inc. ("Apotex"), have brought claims against Cephalon and the four Generic Defendants for violations of the Sherman Act and related state laws.

Litigation in this case has been ongoing for approximately nine years.  The dockets in these matters contain approximately 2,400 entries.  Significant portions of the case have been resolved.  A trial involving those parties that have not settled is scheduled for February 2, 2016.

After I issued an Order certifying the Direct Purchaser Litigation Class, Mylan and Ranbaxy were successful in obtaining Federal Rule of Civil Procedure 23(f) review of this Order from the United States Court of Appeals for the Third Circuit.  Mylan and Ranbaxy have now requested that I stay all proceedings before me pending the Third Circuit's interlocutory review of the Order certifying the Direct Purchaser Litigation Class.  For the reasons that follow, I conclude that Mylan and Ranbaxy have failed to demonstrate that a stay is warranted. Therefore, the trial will commence on February 2, 2016 as scheduled.[3]

---

[1] These companies are Barr Pharmaceuticals, Inc.; Mylan Laboratories, Inc. and Mylan Pharmaceuticals, Inc. (collectively "Mylan"); Teva Pharmaceutical Industries, Ltd. and Teva Pharmaceuticals USA, Inc.; and Ranbaxy Laboratories, Ltd. and Ranbaxy Pharmaceuticals, Inc. (collectively "Ranbaxy").

[2] The Individual Plaintiffs are owners and operators of retail pharmacies who have filed their own separate actions and are excluded from the definition of the Direct Purchaser Litigation Class.

[3] The End-Payor Plaintiffs filed a response in opposition to Mylan and Ranbaxy's motion to stay. However, during a telephone conference held on December 2, 2015, counsel for the End-Payor Plaintiffs advised that they had reversed their position and indicated that they no longer wished to proceed with the trial. Instead, the End-Payor Plaintiffs requested that their case be stayed pending a decision from the Third Circuit on their Rule 23(f) petition filed in connection with the Order denying certification of the End-Payor Litigation Class.  In light of the agreement between the End-Payor Plaintiffs, Mylan and Ranbaxy, I will enter an Order staying the proceedings in the End-Payor Plaintiffs' case only. To date, the Third Circuit has not taken any action on the End Payor Plaintiffs' Rule 23(f) petition.

I.    **PROCEDURAL HISTORY**

The procedural history relevant to the motion to stay is set forth below:

On July 27, 2015, I issued an Opinion and Order granting the Direct Purchaser Plaintiffs'

motion for class certification.  In that Opinion, I found that the Direct Purchaser Plaintiffs had

satisfied the predominance requirement as to both antitrust liability and damages. Regarding

numerosity, I found that the Direct Purchaser Plaintiffs had demonstrated that the parties were

sufficiently numerous so as to make joinder impracticable.  King Drug Co. of Florence, Inc. v.

Cephalon, Inc., 309 F.R.D. 195 (E.D. Pa. 2015).

On August 5, 2015, the Direct Purchaser Plaintiffs filed a motion for approval of the form

and manner of notice to be sent to the class members. On August 11, 2015, I issued an Order

scheduling the liability phase of trial in all matters for February 2, 2016.

On August 12, 2015, Mylan and Ranbaxy filed a petition with the Third Circuit seeking

permission to appeal the July 27, 2015 class certification Order.  The petition was filed pursuant

to Federal Rule of Civil Procedure 23(f) which provides:

> A court of appeals may permit an appeal from an order granting or denying class-
> action certification under this rule if a petition for permission to appeal is filed
> with the circuit clerk within 14 days after the order is entered. An appeal does not
> stay proceedings in the district court unless the district judge or the court of
> appeals so orders.

Mylan and Ranbaxy raised the following two issues in their Rule 23(f) petition:

> (1) Whether the district court contravened Comcast Corp. v. Behrend, when it
>     certified a class whose theory of antitrust injury no longer corresponded to its
>     theory of liability following the district court's grant of summary judgment
>     eliminating all claims of concerted action among Mylan, Ranbaxy and other
>     Generic Defendants.

    (2) Whether the district court erred in concluding that the putative class of 22 members satisfied Rule 23's numerosity requirement.[4]

(Defs.' Rule 23(f) Pet. pp. 1-2.)

Also on August 12, 2015, Mylan and Ranbaxy filed a response in opposition to the Direct Purchaser Plaintiffs' motion for approval of notice, arguing that the parties had not met and conferred, and that the Direct Purchaser Plaintiffs had included improper information in their proposed notice. On the same day, Mylan and Ranbaxy moved to stay class notice pending a decision from the Third Circuit on their Rule 23(f) petition.

On August 13, 2015, I denied the Direct Purchaser Plaintiffs' motion for approval of the form and manner of notice without prejudice and ordered the parties to meet and confer to attempt to resolve the issues in dispute. The Direct Purchaser Plaintiffs were directed to refile their motion if the parties could not reach an agreement. Mylan and Ranbaxy's motion to stay notice pending the Third Circuit's decision was also denied.

On August 24, 2015, after the parties were apparently unable to reach an agreement, the Direct Purchaser Plaintiffs filed a motion to amend and clarify the July 27, 2015 class certification Order. In the motion to amend the certification Order, the Direct Purchaser Plaintiffs, over Mylan and Ranbaxy's objections, sought to add two issues to the list of issues common to the class. These issues pertained to damages and a theory of per se liability based on the Generic Defendants' alleged knowledge of Cephalon's fraudulent patent.[5] That motion also sought the Court's approval of the proposed form and manner of notice. On September 10,

---

[4] Except for a single passing reference, none of the arguments raised by Mylan and Ranbaxy in support of their motion to stay pertain to my numerosity findings.

[5] Defendants have renewed their objection to such a cause of action and moved to strike its inclusion in Plaintiffs' pretrial memorandum. I recently granted Defendants' motion to strike. (See Order and Op. denying Mot. to Strike, Dec. 14, 2015).

2015, Mylan and Ranbaxy filed their opposition to the motion to amend the class certification Order and for approval of notice.

On October 9, 2015, the Third Circuit granted Mylan and Ranbaxy's Rule 23(f) petition, and agreed to hear the appeal of the Order certifying the Direct Purchaser Litigation Class.

On October 16, 2015, Mylan and Ranbaxy filed the instant motion to stay all related proceedings (i.e. King Drug, Vista Healthplan, and Apotex) pending the Third Circuit's decision on the Rule 23(f) appeal of the Order certifying the Direct Purchaser Litigation Class.  As of the writing of this opinion, the Third Circuit has not yet issued a briefing schedule in the Rule 23(f) appeal. According to Mylan and Ranbaxy, the Third Circuit typically takes sixteen months to issue a decision after granting a Rule 23(f) petition.

## II.    **LEGAL STANDARD**

As best as I can tell, the Third Circuit has not yet articulated what standard district courts should apply when deciding motions to stay proceedings pending Rule 23(f) appeals. See Johnson v. Geico Cas. Co., 269 F.R.D. 406, 411 (D. Del. 2010). In the absence of binding precedent, the parties disagree on what standard should govern Mylan and Ranbaxy's motion.

Mylan and Ranbaxy argue that a district court considering a motion to stay proceedings pending resolution of a Rule 23(f) appeal should apply the factors set forth in Nken v. Holder, 556 U.S. 418 (2009). These factors are similar to those examined in the context of a motion for a preliminary injunction: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Id. at 434.

On the other hand, all Plaintiffs agree that application of the <u>Nken</u> factors is inappropriate because that standard only governs motions to stay an order, not all proceedings. Plaintiffs stress that Mylan and Ranbaxy are not just seeking to stay the class certification Order on appeal but, rather, have asked that all proceedings in these consolidated cases be stayed, including the cases involving Apotex and the Individual Plaintiffs. Plaintiffs point out that the issues raised in the Rule 23(f) appeal have no bearing on these other proceedings and, therefore, a different standard should govern the broad stay request.

Plaintiffs cite to <u>Akishev v. Kapustin</u>, 23 F. Supp. 3d 440 (D.N.J. 2014) as the correct standard for a stay of all proceedings pending resolution of a Rule 23(f) appeal. <u>Akishev</u> instructs that courts should look to the following factors in deciding whether to grant such a stay: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether denial of the stay would create a clear case of hardship or inequity for the moving party; (3) whether a stay would simplify the issues and the trial of the case; and (4) whether discovery is complete and/or a trial date has been set." <u>Id.</u> at 446. <u>Akishev</u> also notes that "[w]here a stay is sought pending resolution of purportedly related litigation, . . . courts consider whether resolution of the related litigation would substantially impact or otherwise render moot the present action." <u>Id.</u> (citing <u>Bechtel Corp. v. Local 215, Laborers' Int'l Union</u>, 544 F.2d 1207, 1215 (3d Cir. 1976)).

In certain respects, the <u>Nken</u> and <u>Akishev</u> standards seem to overlap. That said, I am not entirely persuaded that the less stringent <u>Nken</u> test should govern where the motion, like the one before me, seeks a broad stay of all proceedings, including matters which are not directly implicated by an appeal filed in a separate but related case. However, out of deference to Mylan and Ranbaxy, who have successfully obtained 23(f) review and now seek a stay, I will apply the

less stringent standard set forth in <u>Nken</u>.  In any event, regardless of whether I apply the <u>Nken</u> or

<u>Akishev</u> standards, I would still conclude Mylan and Ranbaxy have not met their burden of

demonstrating that a stay is appropriate.

## III.   <u>DISCUSSION</u>

For the following reasons, I conclude that the <u>Nken</u> factors weigh in favor of denying

Mylan and Ranbaxy's motion to stay the proceedings.

### 1.   <u>Likelihood of Success on the Merits</u>

As to the first factor, a movant "need[] only show a <u>likelihood</u> of success on the merits

(that is, a reasonable chance, or probability of winning) to be granted relief.  A 'likelihood' does

not mean more likely than not."  <u>Singer Mgmt. Consultants, Inc. v. Milgran</u>, 650 F.3d 223, 229

(3d Cir. 2011) (emphasis in original).  The Third Circuit has observed that granting a Rule 23(f)

petition is appropriate to address: "(1) the possible case-ending effect of an imprudent class

certification decision (the decision is likely dispositive of the litigation); (2) an erroneous ruling;

or (3) [immediate appeal would] facilitate development of the law on class certification."

<u>Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 259 F.3d 154, 165 (3d Cir. 2001).

Mylan and Ranbaxy assert that the Third Circuit's grant of their 23(f) petition alone

strongly suggests that they have a likelihood of succeeding on the merits of their appeal.

Without any in-depth discussion about the types of cases accepted or the issues reviewed, Mylan

and Ranbaxy cite statistics that purportedly demonstrate that the Third Circuit denies eighty to

eighty-five percent of Rule 23(f) petitions. And, where the defendant filed the appeal, more than

eighty percent of the petitions that are granted ultimately end in a reversal of the district court's

certification order.

Mylan and Ranbaxy also cite to a number of cases from other district courts outside of this Circuit which have held that the grant of a Rule 23(f) petition, where complicated issues of first impression are being considered, weighs in favor of the party seeking a stay.  See In re Lorazepam & Clorezepate Antitrust Litig., 208 F.R.D. 1, 5-6 (D.D.C. 2001) (concluding presence of two issues of first impression in Rule 23(f) petition weighed in favor of a stay); Gray v. Golden Gate Nat'l Recreational Area, 2011 WL 6934433, at *2 (N.D. Cal. Dec. 29, 2011) (finding that matters of first impression raised in the Rule 23(f) appeal relating to Supreme Court precedent weighed in favor of a stay); IBEW Local 98 Pension Fund v. Best Buy Co., 2014 WL 4540228, at *2 (D. Minn. Sept. 11, 2014) (finding likelihood of success on the merits prong weighed in favor of stay where "the question of certification in this action was difficult and involved evolving and novel questions of law").

Plaintiffs vigorously dispute Mylan and Ranbaxy's assertion that the mere acceptance of the Rule 23(f) petition weighs in favor of a stay and argue that the statistics cited by Mylan and Ranbaxy are incomplete and misleading as they omit notable cases, such as In re K-Dur Antitrust Litigation, 686 F.3d 197, 220-21 (3d Cir. 2012).  Plaintiffs urge that the standard is not whether statistically a Rule 23(f) appeal has a reasonable chance of success on the merits but, rather, the question is whether this particular Rule 23(f) has a reasonable chance of success on the merits, which Plaintiffs strongly contend it does not.

Although I carefully considered the issues raised in the 23(f) petition and remain convinced that certification of the Direct Purchaser Litigation Class was correct, I conclude that the first Nken factor weighs slightly in favor of granting the stay.  On one hand, Plaintiffs raise valid points undermining the value of Mylan and Ranbaxy's statistical evidence regarding the Third Circuit's Rule 23(f) practices. On the other hand, Mylan and Ranbaxy's appeal of the

Direct Purchaser Litigation Class certification Order raises an arguably novel question of law concerning Supreme Court precedent – i.e. "the Comcast issue."[6]  However, while the "Comcast issue" may be novel, as discussed extensively infra, I do not believe that Mylan and Ranbaxy's argument is correct as a matter of law or fact.

While it is close, on balance, I find that Mylan and Ranbaxy have made a sufficient showing regarding the likelihood of success on the merits prong.

2.   Irreparable Injury to the Moving Parties Absent a Stay

Regarding the second factor, Mylan and Ranbaxy assert that, absent a stay, they will suffer irreparable harm because "the trial as scheduled poses a very substantial risk of the need to vacate any adverse judgment and re-litigate some portion of the case."  (Defs.' Mot. to Stay p. 6.) Mylan and Ranbaxy explain that should the Third Circuit reverse the Direct Purchaser Litigation Class certification Order, "the entire trial will have been a waste of the parties' resources and the Court's time," and additional discovery would likely be required.  (Id.)

The Direct Purchaser Plaintiffs respond that Mylan and Ranbaxy provide no precedent for the proposition that a waste of the moving parties' resources and the Court's time constitutes an irreparable injury.  In fact, the Direct Purchaser Plaintiffs cite to precedent holding that an alleged waste of resources does not constitute irreparable harm unless the amount of loss would

---

[6] The "Comcast issue" raised in Mylan and Ranbaxy's petition challenges my determination that the Direct Purchaser Plaintiffs' damages model matched their liability theory even though Plaintiffs did not revise their damages calculations after I granted Defendants' motion for summary judgment on Plaintiffs' claims for an overall conspiracy.  I issued this summary judgment opinion on June 23, 2014.

Mylan and Ranbaxy raised the "Comcast issue" for the first time at oral argument on March 26, 2015 – nine months after the grant of summary judgment.  (See Class Cert. Hearing Tr. Mar. 26, 2015 pp. 70:6-73:22.)  When questioned about the delay in pursuing this issue, counsel were unable to provide a satisfactory explanation beyond the fact that there had been a change in representation.  The belated nature of Mylan and Ranbaxy's Comcast argument undermines their position that they have a likelihood of success on the merits.

be so significant as to force the moving party out business entirely.  (Direct Purchasers' Resp. p. 11 (citing <u>Minard Run Oil Co. v. U.S. Forest Serv.</u>, 670 F.3d 236, 255 (3d Cir. 2011) (citations omitted) ("a purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement . . . but an exception exists where the potential economic loss is so great as to threaten the existence of the movant's business."))

Additionally, Plaintiffs point out that Mylan and Ranbaxy cannot be injured by a denial of a stay because the class certification issues on appeal have no effect on Apotex or the Individual Plaintiffs' claims.  Accordingly, Plaintiffs persuasively argue that the trial will, therefore, move forward with Mylan and Ranbaxy, as participants, irrespective of the Third Circuit's resolution of the class certification issues.  Therefore, according to Plaintiffs "neither the parties' resources nor the Court's time will be wasted by holding <u>a trial that has to be held anyway</u>."  (Direct Purchasers' Resp. p. 12 (emphasis in original).)

I agree with Plaintiffs that the second <u>Nken</u> factor weighs in favor of denying the motion to stay all proceedings.  The issues raised in the Rule 23(f) appeal, which by definition are confined to class certification, have no bearing on Apotex or the Individual Plaintiffs.  Mylan and Ranbaxy provide no convincing explanation as to how the Third Circuit's resolution of whether the Direct Purchaser Litigation Class was properly certified could impact a trial involving non-class claims brought by Apotex or the Individual Plaintiffs.  Put another way, even if I were to agree to stay the trial regarding the Direct Purchaser Plaintiffs, Mylan and Ranbaxy would still be ordered to participate in a trial involving parties who have no involvement in the Rule 23(f) appeal.  As such, Mylan and Ranbaxy's inability to show any irreparable harm weighs heavily against the granting of a stay.

Furthermore, the trial scheduled for February 2, 2016 will only involve issues pertaining to antitrust liability not damages.  The issues raised in the Rule 23(f) appeal will not impact what the Direct Purchaser Plaintiffs have to prove at the liability trial.  Mylan and Ranbaxy disagree and urge that the Third Circuit's decision on the issues raised in their Rule 23(f) petition will provide guidance to this Court and the parties on "issues of antitrust impact, causation and damages."  (Defs.' Mot. to Stay p. 5.)

Although styled as a single question presented in their Rule 23(f) petition, Mylan and Ranbaxy argue that my predominance finding was incorrect for two separate reasons. Both arguments are premised on the impact that my summary judgment ruling in favor of Defendants on Plaintiffs' claims for an overall conspiracy had on the ability of the Direct Purchaser Litigation Class to satisfy the predominance requirement.  See King Drug Co. of Florence, Inc. v. Cephalon, Inc., 2014 WL 2813312, at *14 (E.D. Pa. June 23, 2014) (granting summary judgment to Defendants, as evidence in the record did not support an inference of an overall agreement encompassing Cephalon and the four Generic Defendants).

In the first predominance sub-issue raised in the Rule 23(f) petition, Mylan and Ranbaxy contend that, in light of the dismissal of the overall conspiracy claims, each individual Direct Purchaser Plaintiff must now prove, as part of their liability case, which Generic Defendant they would have purchased generic Provigil from in the but-for-world.  According to Mylan and Ranbaxy, "[w]ith the demise of Plaintiffs' claim of an overall conspiracy, a class member who would not have purchased generic modafinil from, e.g., Mylan in the but-for world cannot show antitrust injury resulting from the Mylan-Cephalon agreement."  (Defs.' 23(f) Petition p. 9.)  As each prospective class member may have purchased generic Provigil from a different Generic

Defendant in the but-for world, Mylan and Ranbaxy contend that individualized inquiries predominate, rendering class treatment inappropriate.

Mylan and Ranbaxy cite to Mid-West Paper Products Company v. Continental Group, Inc., 596 F.2d 573 (3d Cir. 1979) in support of this argument.  I previously rejected the applicability of this case in my opinion certifying the Direct Purchaser Litigation Class.  See King Drug Co. of Florence, Inc. v. Cephalon, Inc., 309 F.R.D. 195, 210-12 (E.D. Pa. 2015). Upon further review of this issue, I stand by that decision.

In Mid-West Paper, manufacturers of paper bags were accused of price fixing in violation of the antitrust laws.  596 F.2d at 575.  One of the plaintiffs had not purchased paper bags from any defendant, but instead had purchased paper bags from the defendants' competitors who had allegedly taken advantage of the price fixing by raising their own prices.  Id. at 580-81.  The Third Circuit held that the plaintiff lacked standing to pursue an antitrust violation because the plaintiff did not have a direct relationship with the defendants nor had the defendants secured an illegal benefit at the plaintiff's expense.  Id. at 583.

As I explained in the class certification ruling, the scenario before me is entirely distinguishable from the facts in Mid-West Paper.  Here, members of the Direct Purchaser Litigation Class all purchased Provigil directly from Defendant Cephalon, a signatory to each of the four settlement agreements, including the agreements with Mylan and Ranbaxy.  Unlike Mid-West Paper, this establishes a direct relationship with one of the Defendants.

Mylan and Ranbaxy's Mid-West Paper argument is also inconsistent with Federal Trade Commission v. Actavis, Inc., 133 S. Ct. 2223 (2013).  Here, Mylan or Ranbaxy contributed to the antitrust injury if either received a large and unjustified payment from Cephalon and that payment, funded by the monopoly profits that Cephalon obtained from all Plaintiffs, induced

12

either Generic Defendant to keep its generic product off of the market.  Under <u>Actavis</u>, such a "payment may [ ] provide strong evidence that the patentee seeks to induce the generic challenger to abandon its claim with a share of its monopoly profits that would otherwise be lost in the competitive market."  <u>Id.</u> at 2235.  Therefore, if the Mylan-Cephalon agreement and the Ranbaxy-Cephalon agreements are found to be unreasonable restraints on competition, by accepting large and unjustified payments, both of those Generic Defendants would have secured an illegal benefit at Plaintiffs' expense, regardless of whether any particular Plaintiff would have purchased generic Provigil directly from Mylan or Ranbaxy.  For these reasons, I previously concluded and continue to conclude that individualized inquiry into which Generic Defendant each class member would have favored in the but-for-world is unnecessary and not mandated by <u>Mid-West Paper</u>.

Mylan and Ranbaxy's insistence that the Third Circuit's resolution of their <u>Mid-West Paper</u> argument will significantly impact the liability portion of trial is also not supported by pre-<u>Actavis</u> antitrust precedent.  Indeed, both the Third Circuit and Supreme Court have made it clear that in order to establish antitrust injury Plaintiffs need only prove that they were overcharged for Provigil because an anticompetitive agreement prevented lower-priced competition from entering the market.  See <u>In re K-Dur Antitrust Litig.</u>, 686 F.3d 197, 220-21 (3d Cir. 2012) (holding that direct purchasers in a reverse-payment settlement antitrust case can establish antitrust injury with class-wide evidence of overcharges)[7]; <u>Hanover Shoe, Inc. v. United Shoe Machinery Corp.</u>, 392 U.S. 481 (1968) (plaintiff suffers an antitrust injury when it

---

[7] <u>K-Dur</u> was vacated on other grounds.  <u>See</u> <u>Upsher-Smith Labs., Inc. v. Louisiana Wholesale Drug Co., Inc.</u>, 133 S. Ct. 2849 (2013).

is overcharged for a product). The Direct Purchaser Plaintiffs can possibly establish antitrust injury with class-wide evidence of overcharges.  Nothing more is required.

Mylan and Ranbaxy's Mid-West Paper argument would also essentially foreclose the possibility of any Actavis antitrust class-action involving more than one reverse-payment settlement agreement.  If Mylan and Ranbaxy are correct and plaintiffs in such cases are required to prove which of the generic defendants they would have favored in the but-for world, individualized inquires would likely always predominate in such cases, rendering class treatment inappropriate.

Furthermore, if taken to its logical conclusion, Mylan and Ranbaxy's theory would prohibit a Plaintiff from recovering overcharges if it would have purchased generic Provigil from a competitor of Mylan and Ranbaxy in the but-for world, even though that competitor was allegedly kept off of the market due to the reverse-payment settlements.

In the second sub-issue raised in the Rule 23(f) petition, Mylan and Ranbaxy argue that I contravened Comcast in certifying the Direct Purchaser Litigation Class. Mylan and Ranbaxy challenge my determination that the Direct Purchaser Plaintiffs' damages model matched their theory of liability even though Plaintiffs did not revise their damages calculations after I granted Defendants' motion for summary judgment on Plaintiffs' claims of an overall conspiracy.  A more detailed exploration of Comcast is necessary to fully understand how that case does not impact the motion before me.

In Comcast, the district court certified the class but only accepted one of plaintiffs' four theories of antitrust impact as capable of class-wide proof.  Comcast, 133 S.Ct. at 1431. The damages model the plaintiffs' expert had used to calculate damages for the class included damages from all of the theories of antitrust impact, including the three not certified for class

14

treatment.  Id.  The Supreme Court concluded that the class was improperly certified because plaintiffs had not shown that damages were capable of measurement on a class-wide basis, a necessary requirement of predominance.  Id. at 1433.  In short, Comcast instructs that a "plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation[,]" in order for class treatment to be appropriate.  Id. (emphasis added).  In other words, Comcast simply reaffirms the basic Rule 23 predominance requirement that damages must be provable on a class-wide basis.  In reaffirming this basic requirement, the Comcast Court offered the uncontroversial conclusion that the damages model offered by a class must fit the theory of antitrust liability offered by that class. See Neale v. Volvo Cars of N. Am., LLC, 794 F.3d 353, 375 (3d Cir. 2015).

Mylan and Ranbaxy's argument under Comcast relates solely to the damages portion of the Direct Purchaser Plaintiffs' case.  Even if the Third Circuit were to determine that the Direct Purchaser Plaintiffs' damages model ran afoul of Comcast, Mylan and Ranbaxy have not adequately explained how that finding would affect the liability portion of the pending trial.  As such, the fact that the Third Circuit may review Plaintiffs' damages model under Comcast does not weigh in favor of a stay of the liability trial.

For the reasons set forth above, I am not persuaded by Mylan and Ranbaxy's argument that the scheduled liability trial would be a waste of time amounting to irreparable injury.  This is so even if the Third Circuit eventually concludes that the Direct Purchaser Litigation Class was improperly certified.  Mylan and Ranbaxy's concerns that they will be held jointly and severally liable for overcharges stemming from other agreements relates to the quantum of damages, not fact of injury.  As such, I do not believe that a ruling from the Third Circuit will affect the liability portion of trial, as Defendants' argument is more properly characterized as a damages

issue. For the foregoing reasons, I find that Mylan and Ranbaxy have offered minimal evidence that they would be irreparably harmed by proceeding to trial.

    3.  <u>Whether a Stay Will Substantially Injure the Other Parties</u>

Regarding the third <u>Nken</u> factor, Mylan and Ranbaxy argue that all parties will be injured absent a stay because "the parties will proceed to trial without knowing with certainty which plaintiffs are proper parties to the case, will not know the scope of any final judgment, will not be able to measure Defendants' damages exposure, and will be deprived of the benefit of interlocutory review that the Third Circuit granted." (Defs.' Mot. to Stay p. 7.) According to Mylan and Ranbaxy, if a stay is granted, "Plaintiffs will still be able to prepare for trial and no evidence will be lost over time." (<u>Id.</u> at 8.)

The initial complaints in this consolidated matter were filed almost a decade ago. Since those filings, several unavoidable delays in this litigation have occurred. The first delay was due to two trials over Cephalon's patent and subsequent litigation in the Federal Circuit. The second delay was attributable to the Supreme Court's grant of certiorari in <u>Actavis</u>. Plaintiffs properly note that, since this case was first filed, key witnesses have moved away, one fact witness – Cephalon's former CEO – and one expert witness has passed away, and memories continue to fade. As Mylan and Ranbaxy acknowledge, the Rule 23(f) appeal will likely not be resolved for at least another year which means that, if I were to grant the motion to stay, a trial would likely not occur until early 2017. This is a conservative estimate, particularly in light of the fact that the Third Circuit has not yet issued a briefing schedule. Mylan and Ranbaxy's assertion that "no evidence will be lost over time" ignores these realities.

Additionally, Plaintiffs have expended substantial amounts of time and resources preparing for the February 2nd trial and have continued to do so during the pendency of the

instant motion.  Preparing for a trial of this magnitude requires Plaintiffs' attorneys to acquire a fluency with the many factual issues in this case.  Such an undertaking is significant and a delay of over a year would require duplication of these considerable efforts.  This time consuming and costly preparation would largely be for naught if any or all of the cases are stayed pending the Third Circuit's review.

In light of the foregoing considerations, I conclude that the substantial harm a stay would cause to Plaintiffs outweighs the harm that Mylan and Ranbaxy claim they would face absent a stay of all proceedings.  Therefore, the third <u>Nken</u> factor strongly favors denying the motion to stay.

### 4.  The Public Interest

Mylan and Ranbaxy assert that the public interest favors a stay for two reasons: (1) a stay is necessary to give effect to the Third Circuit's determination that this appeal should be decided on an interlocutory basis; and (2) a stay is necessary to prevent confusion to the class.  Plaintiffs respond that this case has been pending for nearly ten years and the public has a compelling interest in antitrust actions being resolved swiftly.

I conclude that the public interest in prompt resolution of this antitrust matter outweighs the two concerns identified by Mylan and Ranbaxy.  While the Third Circuit did grant the Rule 23(f) petition, proceeding to trial will not interfere with Rule 23(f)'s purpose of providing interlocutory guidance on class certification issues prior to a final judgment.  As explained above, I view the so-called "<u>Comcast</u> Issue" raised in the Rule 23(f) appeal as a damages issue that pertains to Direct Purchaser Plaintiffs only.  The trial set for February 2, 2016 is limited to liability and the damages portion of trial for Direct Purchaser Plaintiffs can be scheduled after the Rule 23(f) appeal is resolved.

In their second argument, Mylan and Ranbaxy urge that there will be serious confusion about how the case will be tried unless the case is stayed or the Court decides the Direct Purchaser Plaintiff's motion to amend the class certification Order.  Mylan and Ranbaxy contend that until that motion is resolved it will be unclear whether Plaintiffs can include a theory of per se liability in the class notice premised on the Generic Defendants' alleged knowledge of Cephalon's fraudulent patent.  However, I recently concluded that such a theory is contrary to Actavis.  (See Order and Op. denying Mot. to Strike, Dec. 14, 2015).  This ruling provides clarity to the theories of liability that Plaintiffs may pursue at trial and moots Mylan and Ranbaxy concerns regarding this issue.

In light of the foregoing, I find that the public interest in resolution of this antitrust matter significantly outweighs the countervailing public interests identified by Mylan and Ranbaxy.  As such, the fourth Nken factor favors denying the motion to stay and proceeding to trial.

In conclusion, upon weighing Mylan and Ranbaxy's likelihood of success on the merits, the comparably modest harm Mylan and Ranbaxy would suffer if the matters are to proceed, the significant harm that Plaintiffs would suffer if all proceedings were to be stayed, and the strong public interest in resolution of this nearly decade old antitrust matter, I conclude that the motion to stay should be denied and trial should proceed as scheduled. This case is simply too complicated, with too many competing interests to satisfy each parties' views regarding trial structure and scheduling. After nine years, Plaintiffs are entitled to their day in court.  Having carefully considered all of the moving parts of this case and how each party would be impacted by a stay, I am convinced that the fairest and most efficient course, in terms of time and resources, is to hold a single trial resolving all claims raised by Apotex, the Individual Plaintiffs and the Direct Purchaser Plaintiffs.

18

**IV.**     **This Court's Jurisdiction to Proceed with Notice and Try the Claims of the Direct Purchaser Litigation Class**

Mylan and Ranbaxy also argue that the Rule 23(f) appeal divests this Court of jurisdiction to "authorize notice to the Direct Purchaser class members or to try the claims of the class or of its representatives."[8] (Defs.' Reply p. 9.)

It is true that as "a general rule, the timely filing of a notice of appeal is an event of jurisdictional significance, immediately conferring jurisdiction on a Court of Appeals and divesting the district court of its control over those aspects of the case involved in the appeal." Venen v. Sweet, 758 F.2d 117, 120 (3d Cir. 1985). "This judge-made rule has the salutary purpose of preventing the confusion and inefficiency which would necessarily result were two courts to be considering the same issue or issues simultaneously." Id. at 121. "[J]urisdictional requirements may not be disregarded for convenience sake." Id. at 123.

Drawing on this general principle, Mylan and Ranbaxy urge that the matters being considered by the Third Circuit are "directly relevant to their theory of liability" and that "any trial of those claims will necessarily involve aspects of the case involved in the appeal." (Defs.' Reply pp. 9-10.) Thus, according to Mylan and Ranbaxy, this Court lacks jurisdiction to hold a trial as to the Direct Purchaser Plaintiffs. Mylan and Ranbaxy cite only one case to support this position, Jama v. Esmor Correctional Services, Inc., 2005 WL 2901899 (D.N.J. Nov. 1, 2005).

Jama, a civil rights action concerning conditions in an immigrant detention facility, involved three related actions—two actions brought by individual plaintiffs and one certified class action. The three actions were consolidated for purposes of discovery only. Id. at *1. The

---

[8] Mylan and Ranbaxy also argued that the Rule 23(f) proceedings divested this Court of jurisdiction to grant the Direct Purchaser Plaintiffs' motion to amend the class certification Order. As noted above, the motion to amend was mooted by my December 14, 2015 ruling on the motion to strike. As such, I need not consider the parties' arguments with respect to the jurisdiction of this court to grant the motion to amend.

district court set a deadline for class members to opt-out, but the plaintiffs in the individual actions never filed opt-out forms and, as a result, became members of the class. Subsequently, the individual plaintiffs sought an additional opportunity to opt out, which the court granted. Id.

Thereafter, the court denied the defendants' motion for summary judgment filed in the actions brought by the individual plaintiffs, finding that the defendants were not entitled to qualified immunity. Id. at *1. The class action then settled, and the court approved the class action settlement. Following entry of final judgment in the class action, the defendants appealed a number of issues, including the denial of qualified immunity and the additional opportunity to opt-out afforded to certain plaintiffs.[9] While the appeal was pending in the Third Circuit, the district court entered an order scheduling trial in the remaining individual plaintiff cases. Id. at *2. However, the district court ultimately concluded that it did not have jurisdiction to proceed with the trial until the appeal was resolved. The district court reasoned that the Third Circuit's review of both the denial of qualified immunity and the grant of the individual plaintiffs' motion to belatedly opt out of the class had the potential to substantially affect the trial (or completely end the case). Id. at *5.

Jama is distinguishable on several fundamental grounds. In Jama, had the Third Circuit determined that the defendants were entitled to qualified immunity, or that the individual plaintiffs should not have been afforded an extended opportunity to opt-out of the class action, there would have been no need for a trial and the case would have been effectively over.

---

[9] While the procedural history is complicated, it appears that the defendants appealed the denial of qualified immunity in the individual plaintiff actions on an interlocutory basis pursuant to Mitchell v. Forsyth, 472 U.S. 511, 530 (U.S. 1985) ("a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable "final decision" within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment.") After final judgment had been entered in the class action, the Third Circuit considered, in a separate appeal, the district court's decision to afford certain plaintiffs a second opportunity to opt-out of the class action.

That is not the situation here.  The Third Circuit is presently considering whether the Direct Purchaser Litigation Class was properly certified.  Even if the class is decertified, that ruling would not conclusively mean that the case is over for all members of the Direct Purchaser Litigation Class (i.e. the named plaintiffs).  More specifically, if the Third Circuit agrees with Mylan and Ranbaxy that the Direct Purchaser Plaintiffs must establish from which Generic Defendant they would have purchased generic Provigil in the but-for world, that issue was never raised in a motion for summary judgment or other dispositive motion.  Therefore, such a ruling from the Third Circuit would not effectively end the case.

Furthermore, even assuming that the Third Circuit does agree with Mylan and Ranbaxy that the Direct Purchaser Plaintiffs must offer this type of evidence, such a ruling would not impact Apotex's ability to establish liability because Apotex is a competitor, not a purchaser of the Generic Defendants' products.

Lastly, Rule 23(f) seems to contemplate that a district court does not lose jurisdiction to proceed with trial simply because a Rule 23(f) petition has been granted.  The rule specifically provides that "[a]n appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders."  Fed. R. Civ. P. 23(f).  Therefore, I conclude that the Rule 23(f) appeal does not divest this Court of jurisdiction to issue notice or move forward with trial.

## V.   <u>CONCLUSION</u>

For all of the reasons set forth above, Mylan and Ranbaxy's motion to stay is denied with respect to the Direct Purchaser Litigation Class, the Individual Plaintiffs, and Apotex.  In light of the agreement between the parties, the motion is granted with respect to the End Payor Plaintiffs.