IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---------------------------------------------------------------
KING DRUG COMPANY OF            :   CIVIL ACTION
FLORENCE, INC., et al.,         :
        Plaintiffs,            :   No. 2:06-cv-1797
                                :
    v.                       :
                                :
CEPHALON, INC., et al.,         :
        Defendants.            :
---------------------------------------------------------------
APOTEX, INC.,                   :
        Plaintiff,             :   No, 2:06-cv-2768
                                :
    v.                       :
                                :
CEPHALON, INC., et al.,         :
        Defendants.            :
---------------------------------------------------------------

Goldberg, J.                                                January 22, 2016

**MEMORANDUM OPINION**

      This Sherman Act antitrust case centers around settlement agreements reached in patent litigation pursuant to Paragraph IV of the Hatch-Waxman Act between a brand-name pharmaceutical company and four generic drug companies.[1] These types of settlements are commonly referred to as "reverse-payment settlements." See FTC v. Actavis, Inc., 133 S. Ct. 2223, 2227 (2013). The antitrust Plaintiffs allege that these settlement agreements are

---

[1] Cephalon, Inc., is the manufacturer of the brand-name pharmaceutical Provigil, and the Generic Defendants are: Barr Pharmaceuticals, Inc. ("Barr"); Mylan Laboratories, Inc. and Mylan Pharmaceuticals, Inc. (collectively "Mylan"); Teva Pharmaceutical Industries, Ltd. and Teva Pharmaceuticals USA, Inc. (collectively "Teva"); and Ranbaxy Laboratories, Ltd. and Ranbaxy Pharmaceuticals, Inc. (collectively "Ranbaxy") (collectively referred to as the "Generic Defendants").

1

anticompetitive and were designed to keep generic drugs off of the market. Defendants respond that the settlement agreements are procompetitive business transactions.

Presently before me is Defendants' "Motion In Limine to Preclude Argument or Evidence Based Upon Defendants' Invocation of Attorney-Client Privilege."[2] For the reasons set forth below, Defendants' motion will be granted.

Throughout the course of this litigation Defendants have exercised the attorney-client and work product privileges regarding legal strategy and advice received in conjunction with the negotiation and signing of the reverse-payment settlement agreements in question. Plaintiffs have continually expressed several concerns regarding Defendants' assertion of the attorney-client and work product privileges. These concerns form the basis of Plaintiffs' opposition to Defendants' motion.

Plaintiffs first argue that when Defendants explore the business reasons behind the settlement agreements at trial, any legal considerations that also motivated the settlement agreements become relevant. When these business reasons come to light, Plaintiffs contend that fairness dictates that they be permitted to ask questions about any legal advice that Defendants also considered, despite the fact that those questions will be answered with an assertion of privilege. (See also Pretrial Conf. Tr., 102-124, Jan. 19, 2016.) Not surprisingly, Plaintiffs have been unable to point to a single case which supports this position.

---

[2] Defendants request an order barring Plaintiffs from: (1) asking any questions in the presence of the jury that they reasonably expect will cause any defense witness to assert the attorney-client privilege or the work product doctrine; (2) calling the jury's attention to the fact that Defendants invoked the attorney-client privilege and the work product doctrine during discovery; and (3) commenting upon or mentioning in argument any Defendant's invocation of the attorney-client privilege or the work product doctrine. At the end of their memorandum supporting this motion, Defendants' specify that Plaintiffs should be prohibited from questioning defense witnesses on the following subjects: (1) legal advice concerning the Paragraph IV litigation; (2) legal advice concerning the settlement agreements at issue; and (3) legal advice on other subjects. (Defs.' Mot. p. 9.)

Second, Plaintiffs are concerned that Defendants will make statements in their openings or present witness testimony that could imply consultation with counsel. For example, Plaintiffs note that Defendants have indicated that they may seek to introduce testimony from former Cephalon CEO Frank Baldino that he believed Cephalon's patent to be "strong." (Pl.'s Resp. p. 4.) Counsel for the Direct Purchaser Class Plaintiffs also anticipates that Defendants' Counsel or defense witnesses will use the term "good faith" when discussing the settlement agreements. (See also Pretrial Conf. Tr., 102-124, Jan. 19, 2016.) Plaintiffs urge that these statements will allow the jury to infer reliance on legal advice.

However, not one witness has been sworn nor have opening statements been heard. Thus I have no idea whether these statements will ever be elicited, or, if they are, the context in which they will be offered. Whether any statement constitutes a waiver of the attorney-client privilege will depend on the circumstances in which the testimony is offered and the development of the trial record. I simply cannot make that determination now. That said, I offer the following general rulings.

The attorney-client privilege is the common law's oldest confidential communications privilege, and it is "worthy of maximum legal protection." Haines v. Ligget Grp., 975 F.2d 81, 89 (3d Cir. 1992). The purpose of the privilege is to "promote broader public interests in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). In light of this purpose, it would be "improper to draw an inference of bad faith from the assertion of the attorney-client privilege." Freedom Card, Inc. v. JP Morgan Chase & Co., 432 F.3d 463, 479-80 n.25 (3d Cir. 2005). While "mere reference to the fact that a conversation between attorney and client occurred is not privileged," such evidence is prohibited if it is only being offered to "enable the jury to draw an adverse inference therefrom." Beraha v. Baxter

Healthcare Corp., 1994 WL 494654, at *3 (N.D. Ill. Sept. 6, 1994). To allow otherwise would effectively "honor the shield of the attorney-client privilege," while simultaneously allowing an opposing party to "use it as a sword to prove its case." McKesson Information Solutions, Inc. v. Bridge Medical, Inc., 434 F. Supp. 2d 810, 812 (E.D. Cal. 2006). In the same vein, "no adverse inference shall arise from invocation of the . . . work product doctrine." Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 383 F. 3d 1337, 1344 (Fed. Cir. 2004) (en banc).

In light of this precedent, Plaintiffs have thus far offered no evidentiary basis for highlighting Defendants' invocation of the attorney-client privilege or the work product doctrine. Calling the jury's attention to that invocation, would serve only to imply that the jury should draw an adverse inference. As noted above, such an implication is wholly improper. Therefore, Plaintiffs may not mention or draw the jury's attention to Defendants' invocation of the attorney-client privilege or the work product doctrine.

Plaintiffs also may not ask any question of a defense witness where it would be reasonable to conclude that the question will elicit an invocation of the attorney-client privilege. Plaintiffs' counsel should be well aware of the types of questions that will prompt Defendants to assert the attorney-client privilege at trial, given the extensive discovery undertaken in this case.

As noted above, Defendants have consistently invoked the attorney-client privilege while assuring Plaintiffs and this Court that they will not state or imply that their decisions to settle the Paragraph IV litigation were premised on the advice of counsel. Defendants have reaffirmed these positions in the motion currently before me. While it is expressly within Defendants' rights to assert the privilege, I have repeatedly advised Defendants, and I do so again here, that any last minute reversal of this position will not be allowed. (See, e.g., Order, 3, Nov. 22, 2010)

5

("attempts at an eleventh-hour change of strategies to interject an advice of counsel defense at summary judgment and/or trial will not be permitted."))

      An appropriate Order follows.